Thomas J. Ernst, J.D.
Dorothy J. Valgenti, Pro Se
JoAnna Valgenti Ernst, Pro Se
Beech Hill Company, Inc. et AL.
784 Morris Turnpike, Suite 134
Short Hills, New Jersey 07078
703-474-7777

U.S. DISTRICT COURT

2009 AUG 26  P 12: 31

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

The Bridges Financial Group, Inc. &
Cross-Claims Against David Bridges,
David J. Bridges, Jr. and BMA Investments
**Plaintiffs**                              Civil Action No. 09-2686-JAG-MCA

Vs.

Beech Hill Company, Inc., Thomas J. Ernst
The Dorothy J. Valgenti Trust, Dorothy J.
Valgenti, Joanna Valgenti Ernst, ET AL.
**Defendants**

## JURY TRIAL DEMANDED

## ANSWER & COUNTER/CROSS CLAIMS
## & AFFIRMATIVE DEFENSES

Come now Defendants, pro se, pursuant to Federal Rules of Civil
Procedures 8(b)-e)(hereinafter FRCP) to set forth its answers and
assert the following Affirmative Defenses.  Further, pursuant to
FRCP 13(g) Defendants assert Cross Claims against David Bridges and
David Bridges, Jr. (both Virginia residents) arising out of these
transactions or occurrences that are the subject matter of the
complaint and counterclaim.  David Bridges and David Bridges, Jr.
are or were, for all times relevant to this litigation, officers,
agents, President, CEO, or other persons in control acting as *Alter*
*Egos* for their wholly owned, Plaintiff The Bridges Financial Group.
Further, David Bridges and David Bridges, Jr. were actual legal
parties to the Contract.

## NATURE OF CROSS CLAIMS &
## AFFIRMATIVE DEFENSES

Defendants assert and counter claim against Plaintiff and its
corporate officers, David Bridges and David Bridges, Jr. the
following, et al., Fraud, Fraudulent Inducement, Operating without
SEC or State Stock Broker Licenses, Unjust Enrichment, Unclean
Hands, and numerous other Affirmative Defenses and Counter Claims.

### PARTIES

1. Defendants are without knowledge as to Plaintiff's legal
status as a Virginia corporation.

2. Cross-Claims are filed against David Bridges and his son,
David J. Bridges, Jr. as officers of Plaintiff operating out of
the same address in Virginia as Plaintiff since they are
officers and use Plaintiff as their Alter Ego.

3. Defendants admit to paragraphs 2 through 8 of Plaintiff's
description of the "Parties."

4. Defendants are without knowledge of paragraph 9.

### JURISDICTION AND VENUE

Defendants admit jurisdiction and venue claims asserted by
Plaintiff.  Further, in this Cross Claim and Counterclaim, the
Defendants are asking this Court award Defendant $500,000 in Punitive
damages for the fraud, fraudulent inducement, unjust enrichment, and
other illegal actions by Plaintiffs, including but not limited to
David Bridges, and David J. Bridges, Jr. posing as a SEC broker.

2

## DEFENDANTS ANSWER TO FIRST COUNT

1. Defendants deny and hotly dispute all of Plaintiff's false allegations in its First Count, including denying all listed in paragraphs 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33.  Said allegations are based on fraud and fraudulent inducement and other illegal actions by Plaintiff and David Bridges, and David J. Bridges, Jr.

## DEFENDANTS ANSWER TO SECOND COUNT

2. Defendants deny and hotly dispute all allegations enumerated in Plaintiff's Second Count and in its paragraphs 34., 35., 36.

## DEFENDANTS ANSWER TO THIRD COUNT

1. Defendants deny and hotly dispute all allegations enumerated in Plaintiff's Third Count and its paragraphs 37, 38.

**3**

## CROSS CLAIMS AND COUNTER CLAIMS

## COUNT I:  FRAUD & BREACH OF CONTRACT

1.  Plaintiff Bridges Financial Group is owned and controlled by David Bridges and David J. Bridges, his son (hereinafter collectively referred to as Plaintiffs) and other unknown parties.

2.  Plaintiffs fraudulently induced Defendants to sign certain loan documents, papers and collateral assignments by knowingly and falsely promising both orally and in writing that Plaintiffs would (1) obtain a Thirty Million dollar loan for Defendants and by (2) lend directly $300,000 USD Cash immediately to Defendants.

3.  Plaintiffs never directly loaned Defendants said $300,000 USD Cash by diverted over $200,000 fraudulently to themselves or other third parties they controlled.

4.  Plaintiffs breach these contracts by failing to obtain Defendants said $30 Million USD Loan they promised to Defendants.

5.  Plaintiffs made said verbal and written promises to Defendant Thomas Ernst and to a third party Texas Insurance Executive Geanne Gill who were present at a meeting with Plaintiffs at the Marriot Hotel restaurant in Tysons Corner, Virginia.

6.  Plaintiffs diverted substantial amounts of said $300,000 for their own purposes.  Plaintiffs, <u>operating without proper SEC licenses</u>, bought and sold public securities purportedly in behalf of Plaintiffs thereby misusing Defendants' money and violating SEC and other Federal stock trade laws.

**4**

7. Plaintiffs, including David Bridges and David J. Bridges are NOT licensed stock brokers and do NOT have proper SEC or State stock broker licenses.

8. Yet, Plaintiffs promised and represented to Defendants that large portions of the purported $300,000 loan were spent on MetCard HMO public stock.

9. By fraud and trick by deceit, Plaintiffs verbally and in writing told Defendants that Large portions of the $300,000 USD loan proceeds were used to buy and sell Metcare stock – without (a) any stock broker licenses and without (b) Defendants express, written permission.

9. Said notes, documents, and other agreements were NOT co-signed or formally Approved by Plaintiffs violating the Statute of Frauds and the purported loan Contract among the parties.

10. Plaintiffs never provided Defendants any proof or evidence of said purchase of public Metcare HMO stock.

11. Plaintiffs never provided Defendants any proof or evidence of their purported Sale of said public Metcare Stock.

12. Plaintiffs failed to provide any IRS Forms 1098 or 1099 regarding the interest Paid to Plaintiffs in behalf of Defendants in violation of Federal and State laws.

13. None of the Plaintiffs were properly licensed as loan brokers, yet Plaintiffs charged large amounts of "points" and other fees against Defendants.

14. Plaintiffs were NOT properly licensed or otherwise registered to make loans or to negotiated or set rates or terms of said purported loans.

COUNT II:  COMMON LAW FRAUD, FRAUDULENT CONCEALMENT, AND THEFT BY DECEIT AND DECEPTION,

Defendants now hereby  re-state and re-allege all the facts, terms, and allegations previously set forth in COUNT I, paragraphs 1 through 14 as if first written herein.  Defendants now further allege as follows:

1.  Plaintiffs diverted additional loan proceeds to third parties including but not limited to one Jerry Green or his JCI Capital firm who also promised Defendants that he was working closely with Plaintiffs to obtain the promised $30 Million loan for Defendants.

2.  Plaintiffs acted in bad faith and engaged in fraud by paying said Green person or his firm without prior, express, written approval from Defendants.

3.  Plaintiffs repeatedly falsely and fraudulently induced Defendants by arranging Numerous phone calls with other third parties like Greg Humphries and Daniel Overmyer who Plaintiffs represented were ready and able to loan Defendants said $30 Million needed for its acquisition plans.

4.  Plaintiffs repeatedly and falsely induced Defendants to sign various notes and agreements and other documents by promising Defendants that all the large fees and large "points" could be easily and quickly recovered from said $30 Million loan proceeds provided by one or more of Plaintiffs' client lenders or funds.

5.  Plaintiffs failed  to provide, at any time relevant herein, a precise, independent clear, accurate accounting to Defendants of their $300,000 loan proceeds.

6

COUNT III:  PLAINTIFFS FRAUD, UNFAIR & DECEPTIVE PRACTICES FALSE
PROMISES, & BREACH OF CONTRACT VIOLATE SECTION 5 of THE FTC ACT,
15 USC 45 ET AL. AND THE ELECTRONIC FUNDS ACT, 15 USC 1693 ET AL IN
CONNECTION TO THEIR ONGOING AND CONTINUAL FRAUD & DECEPTION

Defendants now restate and re-allege all facts, terms, and allegations set forth in COUNT
I and COUNT II and in the respective paragraphs 1 to 14 and paragraphs 1 to 6 therein.
Defendants now further allege as follows:

1. Plaintiffs, for all times relevant herein, represented, warranted, and falsely to
   Defendants that they were licensed brokers and that they could and would obtain
   at least $30 Million in Loan long-term financing for Defendants.

2. Plaintiffs diverted Defendants's money and most of Defendants' loan proceeds
   for their own uses and lied to Defendants about the sources and uses of funds
   without providing and proof of disbursements

3. Plaintiffs repeatedly  and falsely promised Defendants that (1) Plaintiffs had already closed
   numerous multi-million business loan similar to the loan sought by Defendants; and (2)
   Plaintiffs repeatedly and falsely told Defendants that the $30 Million loan was imminent and
   that Plaintiffs had already received verbal approval from numerous lenders with whom they
   closely worked.  Plaintiffs acted in bad faith.

4. Plaintiffs statements to Defendants fraudulently induced Defendants to sign loan papers and
   various notes.

5. Plaintiffs made numerous phone calls and arranged for numerous third party phone calls to
   falsely induced and falsely convince Defendants that their own loan was imminent and that
   funding of their loan was to take place in a very short time.

6. Plaintiffs' representations in numerous phone calls and meetings fraudulently induced
   Defendants to sign various notes and documents based on Plaintiffs misrepresentations and
   fraud.

7

7. Neither Plaintiffs nor David J. Bridges, for all times relevant herein, did not hold or qualify or otherwise maintain a valid state or federal stock broker license.

8. David J. Bridges did NOT receive written authorization or written permission from Defendants to use their own loan proceeds to buy or sell METCARE HMO stock.

9. Plaintiffs, acting thru David Bridges and David J. Bridges, repaid one George Fantini of Delaware over $70,000 from the Defendants' own loan proceeds --- without telling or otherwise disclosing to Defendants said payments to George Fantini of Delaware.

10. Plaintiffs, thru David Bridges and David J. Bridges met at least once with Defendant Thomas J. Ernst and his business associate Geane Gill of Texas at the Marriott Hotel in Tysons Corner, Virginia to discuss Defendants' business matters and planned acquisition of certain insurance related companies.

11. In response to direct questions from Mr. Geane Gill, a former Texas Insurance Commissioner Trustee, David J. Bridges said his firm absolutely had the loan funds and certainly had $30 Million in loan funds available to fully fund the Defendants acquisition project.

12. Plaintiffs, thru David J. Bridges placed an order to buy METCARE HMO public stock using Defendants' loan proceeds without disclosing to Defendants how much stock Bridges bought and at what price Bridges bought.

13. Plaintiffs, thru David J. Bridges placed an order to sell METCARE HMO public stock but did not give any proceeds from said sale to Defendants without disclosing to Defendants how much stock he ordered sold and how much money he and/or Plaintiffs received from said sale of METCARE stock.

14. Plaintiffs, thru David J. Bridges, took Defendants' own loan proceeds money to pay one Jerry Green and/or JCI Capital of Cherry Hill, New Jersey thousands of dollars --- without disclosing said payments to Defendants and without written, prior permission from Defendants.

8

15. In response to a direct question from Mr. Geane Gill as to what Mr. Gill
    should tell or inform the *Texas Insurance Commissioner* who had appointed
    Mr. Gill as *TRUSTEE* about the immediate loan to Defendants and the
    subsequent purchase of certain companies Defendants wished to buy,
    Plaintiffs, thru David J. Bridges, emphatically told Defendant Thomas Ernst
    and Mr. Gill that the $30 Million in loan proceeds was available and that the
    acquisition could absolutely proceed quickly.

16. Plaintiffs' statements and responses to both *Texas Insurance Commissioner
    TRUSTEE*, Mr. Geane Gill and Defendant Thomas Ernst did then
    fraudulently induce Defendant Thomas Ernst to sign certain notes and other
    documents tendered and drafted by Plaintiffs.

17. Plaintiffs, including David J. Bridges and David Bridges never provided
    Defendants any CPA accounting or otherwise audited statement showing
    actual disbursements of the $300,000 USD purported loaned by Plaintiffs to
    Defendants.

18. Plaintiffs, including David J. Bridges and David Bridges never provided or
    otherwise produce written accounts *(including but not limited to IRS Forms
    1098 and/or 1099)* detailing the actual amounts of interest and points
    Defendants paid to these Plaintiffs.

19. Plaintiffs, including David J. Bridges and David Bridges never provided or
    otherwise produce to Defendants any written accounts or receipts from
    either themselves and/or from George Fantini of Delaware of money
    transfers and money repayments to and from Plaintiffs and Mr. Fantini.

20. Plaintiffs, thru David J. Bridges, repeatedly promised and assured
    Defendant, Thomas Ernst that the $30 Million loan was imminent and that
    Plaintiffs had numerous funding sources who were ready to provide said
    loan.

9

**COUNT IV: PLAINTIFFS' FRAUD & FRAUDULENT BUSINESS PRACTICES & PLAINTIFFS VIOLATIONS OF STATE AND FEDERAL SECURITIES LAWS AS WELL AS STOCK REGULATIONS INVALIDATES ANY PURPORTED NOTES, CONTRACTS OR OTHER DOCUMENTS**

**Defendants now restate and re-allege all facts, terms, and allegations set forth in Counts I, II, and III including but not limited to their respective paragraphs 1 to 14, and 1 to 6, and 1 to 20 as if first written herein.**

1. **Plaintiffs, acting thru David J. Bridges and other third parties, falsely told Defendant Thomas Ernst that he had bought and sold large amounts of a public stock, METCARE HMO.**

2. **Plaintiff David J. Bridges failed to produce and, in fact, concealed any purchase or sales evidence or proof or trading slips or broker accounts or reports.**

3. **Bridges, like Bernie Madoff, told Defendant that all of Defendant's funds were NOT available and could NOT be paid to Defendants due to this unauthorized Securities trading by the un-licensed David J. Bridges.**

4. **Plaintiffs' false statements and/or omissions deceived and misled Defendant Thomas Ernst as Bridges failed to tell Defendants when exactly said purchases and sales of public stock were made.**

5. **Plaintiffs, acting thru David J. Bridges, failed or omitted or misled Defendants by failing to disclose to Defendants at what specific price the METCARE stock was bought and at what specific price said METCARE stock was sold --- if said transactions ever even occurred as stated by David J. Bridges.**

10

6. Plaintiffs knew or should have known such information about buying and selling METCARE stock was false or incomplete or misleading thereby defrauding Defendants in violation of State and Federal securities laws.

7. Plaintiffs acted fraudulently regarding the METCARE stock by (a) lacking any written authority or approval from Defendants, (b) acting as Unlicensed Stock Brokers, and (c) by concealing or failing to disclose to Defendants the actual purchase and actual sale of said METCARE stock purportedly involving over $100,000 USD CASH taken from Defendants.

8. Plaintiffs have never truthfully disclosed to Defendants precisely how much actual cash from the purported $300,000 USD loan were ever actually paid to Defendants.

9. Plaintiffs falsely withheld most pertinent financial data regarding the actual disbursement of said loan as Plaintiffs never told Defendants how much interest was paid by Defendants nor did Plaintiffs ever disclose to Defendants precisely who or what firms were paid or received disbursements from Defendants $300,000 loan proceeds.

10. Plaintiffs Bridges et al., with unclean hands, now purport to continue their fraud and shell games by attempting to collect $300,000 USD which they never actually loaned or disbursed directly to Defendants.

11. Plaintiffs never have given, for all times relevant herein, a precise, audited accounting of said $300,000 USD Plaintiffs Bridges purportedly loaned to Defendants with any particularity.

12. Plaintiffs, acting thru David J. Bridges, failed to disclose to Defendants with particularity (a) how many shares of METCARE stock were purchased, nor what class of METCARE stock was bought, nor when they were purchased, nor from whom where they purchased.

13. Plaintiffs, acting thru David J. Bridges, continued their fraud and deception To the harm of Defendants, by failing to tell or otherwise inform Defendants how long said METCARE stock was held, in whose name was the stock held and how much money was earned or lost on this purported public stock sale.

14. Plaintiffs, acting through Bridges, failed to disclose with particularity any fees, charges, points to Defendants.  Plaintiffs also failed or omitted with intention to hide or deceive Defendants precisely who and what firms received money from Defendants' $300,000 USD loan.

15. Plaintiffs unjustly enriched themselves and other unknown third parties by mis-using Defendants $300,000 loan proceeds without Defendants' actual knowledge or permission in breach of contract and in violation of their fiduciary duties of good faith to Defendants.

12

## COUNT V:
## LACK OF CONSIDERATION MAKES THE PROMISSORY NOTE LEGALLY VOID AND UNENFORCEABLE

Plaintiff now restates and re-alleges all facts, terms, and allegations contained herein, including but not limited to those in Count I, paragraphs 1 through 14; and also in COUNT II, paragraphs 1 through 8; and in COUNT III, paragraphs 1 through 9; and in COUNT IV, paragraphs 1 through 8. Moreover, now Plaintiff further alleges as follows:

1.  As an alternative argument, in the unlikely event that the Promissory Note is not ruled legally void due to Defendants' fraud and fraudulent inducements, Plaintiff then asks this Court to rule the Promissory Note is unenforceable due to lack of valid consideration. Consideration is a legal requirement for a valid contract. Consideration is defined as "something of value (such as an act, a forbearance, or a return promise) received by a promisor from a promise. See Black's Law Dictionary 300 (7th Ed.,1999).

2.  One Federal Court held "To constitute consideration, there must be a benefit accruing to the promisor or a detriment to the promisee." See *B-Dry Owners Ass'n. v. B-DrySys.,Inc.,* 636 N.E. 2d 161, 163 (Ind.Ct.App. 1994) In this instant case, the fraudulent Defendants gained enormously from their fraud; Defendants kept, diverted or converted over $212,000 from this bogus loan. Certainly, there was no "detriment" to them as promisee. Rather, Defendants only benefited from their fraud.

13

3. By sharp contrast, Plaintiff received no real gain nor any real benefit. Rather, Defendants seek in 2008 to collect from Plaintiff more than 100% of their bogus loan PLUS interest. Clearly, Plaintiff is enormously burdened due to Defendants' fraud and its theft by conversion of Plaintiff's loan "proceeds."

4. Plaintiff received no benefit, only an enormous debt from this bogus transaction. Instead, the only party that benefited from this raw deal was the promisee, Defendants. Although Plaintiff may have been fraudulently induced or otherwise misled and wrongly convinced that there was some very elusive benefit in this deal, the Promissory Note was not supported by consideration. Under these circumstances, the Defendants' unclean hands should not reap even more profit from their fraudulent actions.

5. Moreover, Plaintiff suffered real harm as a direct consequence of Defendants' fraud. Plaintiff lost any and all interest on the $300,000 in full loan proceeds he should have received. Plaintiff's interesting three (3) valuable real property, single family residences are gravely impaired. Plaintiff lost business opportunities on which he could have earned a decent return with his $300,000 loan proceeds if only Defendants had NOT committed their fraud.

## COUNT VI: LACK OF CONSIDERATION & BREACH OF CONTRACT

Defendants do hereby restate and reallege all facts, terms, and allegation contained in Counts I, II, III, IV, and VI including but not limited to all the following respective paragraphs 1 to 14, 1 to 6, 1 to 8, and 1 to 15. Defendants further allege as follows:

1. Plaintiffs breached the contract with certainty by their failure to pay and give consideration to Defendants of said $300,000 loan USD. Their breach consists of their non-payment to Defendants and of their diversion of hundreds of thousands of dollars to themselves and other unknown third parties.

2. Plaintiffs committed numerous acts of fraud and negligence, including but not Limited to purportedly buying and selling stock without owners' permission and by being unlicensed to sell or buy stock for other third parties in a negligent manner constituting constructive or actual fraud and breach of contract.

3. Plaintiffs committed Federal and/or State Securities fraud by purportedly conducting unauthorized stock transactions and breaching their fiduciary contract duties to disburse all $300,000 USD to Defendants. The US Supreme Court, in SEC v. Zandford, 535 U.S. 813 (2002) held that "securities fraud exists where the Securities transactions and breaches of fiduciary duty coincide."

4. To this day, Plaintiffs have never told or disclosed to Defendants when such SEC METCARE stock unauthorized purchases took place, if ever, nor when any Equally unauthorized sales of METCARE stock took place.

5. Accordingly, Defendants allege these securities fraud under 28 U.S.C> 1658(b) et Seq. under Section 10(b) until, in discovery, actual facts are determined to apply the correct Statute of Limitations – these transactions may never have occurred making David J. Bridges may be a mini Bernie Madoff.

15

## DEFENDANTS' PRAYER FOR RELIEF & PROPOSED ORDER

Come now Defendants to pray and ask this Honorable Court to dismiss Plaintiffs' various Motions and to render its Judgment in favor of Defendants including but not limited to the following relief:

1. Plaintiffs' Motion for Default Judgment is dismissed with prejudice;

2. The various notes and mortgages purportedly given to Plaintiffs are now declared invalid for lack of consideration and now rendered null and void in light of Plaintiffs' fraud and violations of various Federal and State laws;

3. Plaintiffs are hereby ordered, at their expense to render a full and complete accounting of the said $300,000 USD loan proceeds due but never given to Defendants;

4. Defendants are awarded $400,000 in punitive and $300,000 in compensatory damages.

5. Plaintiffs are ordered to pay Court costs and appropriate Attorney fees.

Defendants also ask this Honorable Court to grant, in law and in equity, any other remedies, orders, equitable and legal relief, and other compensation in deems fair and just.

Respectfully Requested by Defendants, Pro Se

Thomas J. Ernst,

Dorothy J. Valgenti

Joanna Valgenti Ernst

Beech Hill Company, Inc.

## <u>VERIFIED COMPLAINT</u>

The undersigned now being duly sworn and of legal age do certify and affirm that we have carefully read the attached Cross-Claim and Counter-Complaint and that we have direct and indirect knowledge of the allegations contained therein.  Further, we affirm to the best of our knowledge and belief all such allegations are true and accurate.

**BY:** *Thomas J. Emt*

*Dorothy J. Valgati*

*Julia V. ...*

*Beech Hill Company*

**NOTARY PUBLIC:** *Keepohlan   08/25/2009*

```
POH IM LEE
Notary Public
State of New Jersey
My Commission Expires Nov 9, 2012
```

### <u>PROOF & CERTIFICATE OF SERVICE</u>

We certify that a true copy of the above materials and filing was mailed by US First Class Prepaid Mail to all counsels and parties of record on this 25th day of August 2009 with Return Receipt Requested.

*Thomas J. Emt*

*Dorothy J. Valgati*

*Julia V. ...*

*Beech Hill Company, Inc.*

**ARCHER & GREINER**
A PROFESSIONAL CORPORATION
COUNSELLORS AT LAW
ONE CENTENNIAL SQUARE
HADDONFIELD, N.J. 08033

# ORDER

After review of the pleadings and affidavits, this COURT now ORDERS AND

ADJUDGES AS Follows:

    1.  Plaintiffs' Motion for Default Judgment is dismissed with prejudice;

    2.  The various notes and mortgages purportedly given to Plaintiffs are now declared invalid for lack of consideration.  Further said documents are now rendered null and void in light of Plaintiffs' fraud and violations of various Federal and State laws;

    3.  Plaintiffs are hereby ordered, at their expense to render a full and complete accounting of the said $300,000 USD loan proceeds due but never given to Defendants;

    4.  Defendants are awarded $400,000 in punitive and $300,000 in compensatory damages.

    5.  Plaintiffs are ordered to pay all Court costs and all appropriate Attorney fees to and for the Defendants.

IT IS NOW SO ORDERED:

BY: _____

                         U.S. DISTRICT JUDGE
                         FOR THE DISTRICT OF NEW JERSEY

DATE:

PROOF AND CERTIFICATE OF SERVICE

The undersigned certify and affirm that a true copy of this Application and all other documents were

served by US Mail, First Class per-paid to all Defendants and Counsels of Record on this 25ᵗʰ day of

August 2009.

08/25/2009

POH IM LEE
Notary Public
State of New Jersey
My Commission Expires Nov 9, 2012

Archer & Greiner
Jerrold Kulback

Thomas J. Ernst

Dorothy J. Valgenti

Joanna Valgenti Ernst

Beech Hill Company, Inc

U.S. DISTRICT COURT
2009 AUG 26 P 12: 31

POH IM LEE
Notary Public
State of New Jersey
My Commission Expires Nov 9, 2012