EXHIBIT "L"

| | | |
|---|---|---|
| STATE OF INDIANA | ) | IN THE ALLEN SUPERIOR COURT |
| | ) SS: | |
| COUNTY OF ALLEN | ) | SITTING AT FORT WAYNE, INDIANA |

DEUTSCHE BANK NATIONAL TRUST COMPANY,
AS TRUSTEE UNDER NOVASTAR MORTGAGE
FUNDING TRUST, SERIES 2007-1
      Plaintiff

-vs-                        CAUSE NO. 02D01-0809-MF-459

DOROTHY VALGENTI; BMA INVESTMENTS, LLC;
and GEORGE FANTINI
      Defendants

THE STATE OF INDIANA TO THE DEFENDANT:    George Fantini
                                    3724 PHILADELPHIA PIKE APT
                                    CLAYMONT DE 19703-3412

      You have been sued by the person(s) identified as "Plaintiff" in the Court stated above.

      The nature of the suit against you is stated in the COMPLAINT which is attached to this SUMMONS.   It also states the demand which the Plaintiff has made against you.

      You must either personally or by your attorney file your written answer to the COMPLAINT with the Clerk within twenty (20) days commencing the day after this SUMMONS and the COMPLAINT were personally served upon you or your agent or left for you by the Sheriff or other process server.

      In the event the SUMMONS and COMPLAINT were left for you and you then receive by first class mail (not certified) a copy of the SUMMONS alone, this mailing is merely confirmation that the SUMMONS and COMPLAINT were previously left for you.   You should not consider the date on which you receive the mailed SUMMONS as the commencement date for the time period allowed for your answer.   Rather, the time period allowed for your written answer commences on the date when the SUMMONS and COMPLAINT were first personally served upon you or your agent or left for you by the Sheriff or other process server.

      However, if you or your agent first received the SUMMONS and the COMPLAINT by certified mail, you have twenty-three (23) days from the date of receipt to file your written answer with the Clerk.

      If you fail to answer the COMPLAINT of the Plaintiff within the times prescribed herein, judgment may be entered against you for what the Plaintiff has demanded.

      If you have a claim against the Plaintiff arising from the same transaction or occurrence, you must assert such claim in writing together with your written answer.

      The following manner of service is hereby designated: Process Server

                                                      SEP 2 2 2008

Attorney for Plaintiff:                Date:
MATTHEW C. ABAD #25911-45        THERESE M. BROWN
BURKE COSTANZA & CUPPY LLC      CLERK OF THE ALLEN CIRCUIT AND SUPERIOR
   COURTS
9191 BROADWAY                   CENTRAL SERVICE DIVISION, ROOM 201
MERILLVILLE, IN 46410           715 SOUTH CALHOUN ST.
Tel No. (219) 769-1313            FORT WAYNE, IN 46802
                                 Te. No. (260) 449-7245

                             By:    Deputy Clerk

## PREPARATION DATA:

ALL Summons are to be prepared in triplicate with the original of each to be placed in the Court file with two copies available for service. If service is by certified mail a properly addressed envelope shall be provided for each Defendant.

Certified mail labels and return receipts must also be furnished for each mailing and the cause number must appear on each return receipt, which shall be returnable to the Clerk at the address of the Court.   (Form: CS 1/97)

{File: 00161596.DOCX}
File: 00004927.S

STATE OF INDIANA      )           IN THE ALLEN SUPERIOR COURT
                       )  SS:
COUNTY OF ALLEN      )          SITTING AT FORT WAYNE, INDIANA

DEUTSCHE BANK NATIONAL TRUST COMPANY,
AS TRUSTEE UNDER NOVASTAR MORTGAGE
FUNDING TRUST, SERIES 2007-1
      Plaintiff

-vs-                    CAUSE NO. 02D01-0809-MF-459

DOROTHY VALGENTI; BMA INVESTMENTS, LLC;
and GEORGE FANTINI
      Defendants

## AMENDED COMPLAINT FOR FORECLOSURE

Comes now the Plaintiff and for cause of action against BMA Investments, LLC and

George Fantini the added Defendants and alleges:

1. Plaintiff incorporates and re-alleges the allegations in its original complaint

filed on September 9, 2008, a copy is attached as Exhibit A.

2. In addition, Plaintiff alleges that the added Defendants, BMA Investments,

LLC and George Fantini, claim to hold some lien or right, title and interest in and to the real

estate described in Plaintiff's complaint as described in the Updated Foreclosure Commitment,

but that any liens, rights, title or interests of the added Defendants are junior and subsequent to

Plaintiff's mortgage lien. A copy of the Updated Foreclosure Commitment is attached as Exhibit

B.

{File: 00161587.DOCX}
File: 00085854.WPD

WHEREFORE, Plaintiff prays for Judgment against all defendants as prayed in the original complaint, and in addition, requests this Court to foreclose any right, title or interest of the added Defendants, BMA Investments, LLC and George Fantini and for all further and proper relief.

BURKE COSTANZA & CUPPY LLP
Attorneys for Plaintiff

Phillip A. Pluister #26544-64
Matthew C. Abad #25911-45
9191 Broadway
Merrillville, IN 46410
(219) 769-1313

## NOTICE REQUIRED BY STATE LAW

**Mortgage foreclosure is a complex process. People may approach you about "saving" your home. You should be careful about any such promises. There are government agencies and nonprofit organizations you may contact for helpful information about the foreclosure process. For the name and telephone number of an organization near you, please call the Indiana housing and community development authority.**

{File: 00161587.DOCX}
File: 00085854.WPD

STATE OF INDIANA          IN THE ALLEN SUPERIOR COURT

COUNTY OF ALLEN         SITTING AT FORT WAYNE, INDIANA

DEUTSCHE BANK NATIONAL TRUST COMPANY,    **02D01-0809-MF-459**
AS TRUSTEE UNDER NOVASTAR MORTGAGE
FUNDING TRUST, SERIES 2007-1
       Plaintiff

-vs-                        CAUSE NO.

DOROTHY VALGENTI
       Defendant.

## COMPLAINT FOR FORECLOSURE

      Plaintiff, DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE UNDER NOVASTAR MORTGAGE FUNDING TRUST, SERIES 2007-1, by BURKE COSTANZA & CUPPY LLP, its attorney, alleges against the Defendants as follows:

      1.      On or about July 31, 2006, the Defendant Dorothy Valgenti ("Mortgagor"), executed an Adjustable Rate Note ("Note") and Mortgage to NovaStar Mortgage, Inc., in the amount of $247,500.00, the Mortgage names Mortgage Electronic Registration Systems, Inc. as Nominee. Copies of the Note and Mortgage (collectively "Written Instruments") are attached as Exhibits A and B respectively.

      2.      At the time Mortgagor executed the Written Instruments, Mortgagor owned the real estate pledged as collateral (the Property). The Property is located in Allen County, Indiana, and legally described as follows:

                 Lot Number 32 in Harrison Hill Addition to the City of Fort Wayne, Allen County, Indiana, except the East 40 feet thereof, as recorded in Plat Record 7, page 116.

                 More Commonly Known As: 4135 Harrison Street Fort Wayne, IN

{File: 00158977.DOC}

3.     That Mortgage Electronic Registration Systems, Inc. as nominee for NovaStar Mortgage, Inc. assigned the Mortgage to Plaintiff and Plaintiff is the holder in due course of the Mortgage given by Mortgagor described above.

4.     The Mortgagor defaulted under the terms of the Written Instruments (the Default) and Plaintiff accelerated the balance due under the Note. The unpaid balance due is $278,499.14, with interest at 10.25% per annum from September 3, 2008.

5.     As a result of the Default, the Plaintiff has and will incur additional expenses and costs. All additional expenses and costs incurred by Plaintiff to enforce the Written Instruments are secured by the Mortgage. If Mortgagor is not under the protection of a Bankruptcy Discharge or Stay, those sums are also due and payable from the Mortgagor under the terms of the Note. The additional expenses and costs include, but are not limited to title commitments, court costs, reasonable attorney's fees, taxes, insurance, and property preservation charges.

WHEREFORE, Plaintiff prays for a Judgment against all Defendants as follows:

A.  Declaration that, except for real property taxes and assessments due and owing as of the date of the Sheriff's Sale, Plaintiff's Mortgage is a valid first lien upon the Property; that the equity of redemption of Dorothy Valgenti, and all persons claiming under them be foreclosed, and that all other Defendants set up their liens or interest in the Property or be forever barred from asserting their claim(s);

B.  Personal Judgment against Dorothy Valgenti upon the Written Instruments in the amount of $278,499.14, with interest at 10.25% per annum from September 3, 2008, plus title charges, expenses for property preservation and maintenance of the real estate, if applicable, reasonable attorney fees, court costs, and interest.

{File: 00158977.DOC}

C. An Order directing the Sheriff to sell the Property fee and clear of all liens, claims and interests, and that Plaintiff be paid out of the proceeds of the sale; and for such other relief as may be proper and necessary.

BURKE COSTANZA & CUPPY LLP

Attorneys for Plaintiff

Matthew C. Abad #25911-45
Phillip A. Pluister #26544-64
9191 Broadway
Merrillville, IN 46410
(219) 769-1313

## NOTICE REQUIRED BY STATE LAW

**Mortgage foreclosure is a complex process. People may approach you about "saving" your home. You should be careful about any such promises. There are government agencies and nonprofit organizations you may contact for helpful information about the foreclosure process. For the name and telephone number of an organization near you, please call the Indiana housing and community development authority.**

{File: 00158977.DOC}

*0002550218*

MIN: 100080190057733297          Loan Number: 06-788308

## ADJUSTABLE RATE NOTE
### (LIBOR Six-Month Index (As Published In *The Wall Street Journal*)-Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

JULY 31, 2006          INDEPENDENCE          OHIO
[Date]                 [City]                [State]

4135 S HARRISON ST, FORT WAYNE, INDIANA 46807
[Property Address]

**1.    BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $247,500.00 (this amount is called "Principal"), plus interest, to the order of Lender. Lender is NOVASTAR MORTGAGE, INC., A VIRGINIA CORPORATION

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.    INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 10.250 %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3.    PAYMENTS**

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the 1st day of each month beginning on SEPTEMBER 1 2006. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on AUGUST 1, 2036, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O. BOX 808911, KANSAS CITY, MISSOURI 64184--8911

or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ 2,217.85 . This amount may change.

(C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

MULTISTATE ADJUSTABLE RATE NOTE--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)--Single Family
Fannie Mae MODIFIED INSTRUMENT          Page 1 of 5

Form 3520 1/01
DocMagic *eFarms* 800-649-1362
www.docmagic.com

DGV 7/3/06

4.   **INTEREST RATE AND MONTHLY PAYMENT CHANGES**

   (A) Change Dates
   The interest rate I will pay may change on the  1st  day of  AUGUST,  2008                , and on that day every  6th  month thereafter.  Each date on which my interest rate could change is called a "Change Date."

   (B) The Index
   Beginning with the first Change Date, my interest rate will be based on an Index.  The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*.  The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."
   If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information.  The Note Holder will give me notice of this choice.

   (C) Calculation of Changes
   Before each Change Date, the Note Holder will calculate my new interest rate by adding  SIX  AND 400/1000                        percentage points (       6.400   %) to the Current Index.  The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%).  Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.
   The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments.  The result of this calculation will be the new amount of my monthly payment.

   (D) Limits on Interest Rate Changes
   The interest rate I am required to pay at the first Change Date will not be greater than       13.250 % or less than    10.250 %.  Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE  AND  000/1000                   percentage point(s) (       1.000     %) from the rate of interest I have been paying for the preceding  6           months.  My interest rate will never be greater than     17.250 %.  My  interest  rate  will  never  be  less  than        10.250         %.

   (E) Effective Date of Changes
   My new interest rate will become effective on each Change Date.  I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

   (F) Notice of Changes
   The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change.  The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

5.   **BORROWER'S RIGHT TO PREPAY ** See attached Prepayment Note Addendum.**

   I have the right to make payments of Principal at any time before they are due.  A payment of Principal only is known as a "Prepayment."  When I make a Prepayment, I will tell the Note Holder in writing that I am doing so.  I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.
   I may make a full Prepayment or partial Prepayments without paying any Prepayment charge.  The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note.  However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note.  If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes.  My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment.  However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

MULTISTATE ADJUSTABLE RATE NOTE--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)--Single Family
Fannie Mae MODIFIED INSTRUMENT                        Page 2 of 5

Form 3520 1.01
DocMagic EForms 800-649-1362
www.docmagic.com

DgV 7/31/06

## 6.   LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7.   BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of     15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8.   GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9.   OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10.   WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

MULTISTATE ADJUSTABLE RATE NOTE--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN THE WALL STREET JOURNAL)--Single Family
Fannie Mae MODIFIED INSTRUMENT                    Page 3 of 5

Form 3520 1/01
DocMagic €Parms  800-649-1362
www.docmagic.com

DBV 7/31/06

**11.  UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions.  In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note.  That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note.  Some of those conditions read as follows:

Transfer of the Property or a Beneficial Interest in Borrower.  As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.  Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption.  Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument.  Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

MULTISTATE ADJUSTABLE RATE NOTE--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)--Single Family
Fannie Mae MODIFIED INSTRUMENT                   Page 4 of 5

Form 3520 1/01
DocMagic *eForms* 800-649-1362
www.docmagic.com

DJV  7/31/06

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.
You are not obligated to pay any money unless you sign this
contract and return it to the Seller/Lender.

_Dorothy J. Valgenti_  1/31/06 _____ (Seal)
DOROTHY   VALGENTI          (Seal)        -Borrower
                           -Borrower

_____ (Seal)    _____ (Seal)
                        -Borrower                        -Borrower

_____ (Seal)    _____ (Seal)
                        -Borrower                        -Borrower

*[Sign Original Only]*

MULTISTATE ADJUSTABLE RATE NOTE--LIBOR SIX-MONTH INDEX                 Form 3520 1/01
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)--Single Family    DocMagic *CFrombe* 800-649-1362
Fannie Mae MODIFIED INSTRUMENT              Page 5 of 5                www.docmagic.com

# PREPAYMENT ADDENDUM TO NOTE

Loan Number: 06-788308

Date: JULY 31, 2006

Borrower(s): DOROTHY  VALGENTI

THIS PREPAYMENT ADDENDUM TO NOTE (the "Addendum") is made this    31st    day of
JULY,  2006                , and is incorporated into and shall be deemed to amend and supplement
that certain promissory note (the "Note") made by the undersigned ("Borrower") in favor of NOVASTAR
MORTGAGE, INC., A VIRGINIA CORPORATION

("Lender") and dated the same date as this Addendum.  Repayment of the Note is secured by a Mortgage, Deed of
Trust, or Security Deed (the "Security Instrument") given by Borrower in favor of Lender and dated the same date
as this Addendum.  To the extent that the provisions of this Addendum are inconsistent with the provisions of the
Note, the provisions of this Addendum shall supersede the inconsistent provisions of the Note.

ADDITIONAL COVENANTS.  In addition to the covenants and agreements made in the Note, Borrower
and Lender further covenant and agree as follows:

Section  5   of the Note is amended to read in its entirety as follows:

5.   BORROWER'S RIGHT TO PREPAY; PREPAYMENT CHARGE
I have the right to make payments of Principal at any time before they are due.  A payment
of Principal only is known as a "Prepayment."  When I make a Prepayment, I will tell the Note
Holder in writing that I am doing so.  I may not designate a payment as a Prepayment if I have not
made all the monthly payments due under the Note.
The Note Holder will use my Prepayments to reduce the amount of Principal that I owe
under the Note.  However, the Note Holder may apply my Prepayment to the accrued and unpaid
interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount
of the Note.  If I make a partial Prepayment, there will be no changes in the due dates of my
monthly payment unless the Note Holder agrees in writing to those changes.
If the Note provides for changes in the interest rate, my partial Prepayment may reduce the
amount of my monthly payments after the first Change Date following my partial Prepayment.
However, any reduction due to my partial Prepayment may be offset by an interest rate increase.
If within TWENTY-FOUR  ( 24     ) months from the date the Security Instrument is
executed I make a full Prepayment, I will pay a Prepayment charge in an amount equal to
TWO                      percent (    2.000  %) of the loan Principal.

DocMagic @Forms 800-649-1362
www.docmagic.com

DNV  7/31/06

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Addendum.

Dorothy J. Valgenti   7/31/06
_____     _____
Borrower DOROTHY  VALGENTI    Date          Borrower                              Date

_____     _____
Borrower                              Date          Borrower                              Date

_____     _____
Borrower                              Date          Borrower                              Date

INDIANA PREPAYMENT ADDENDUM TO NOTE - FIRST LIEN
(REV. 12/04)                          Page 2 of 2                    DocMagic eForms 800-649-1362
                                                                     www.docmagic.com

After Recording Return To:
NOVASTAR MORTGAGE, INC.
6200 OAK TREE BLVD. THIRD FLOOR
INDEPENDENCE, OHIO 44131
Loan Number: 06-788308

——————————————— [Space Above This Line For Recording Data] ———————————————

# MORTGAGE

**MIN: 100080190057733297**

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A)  "Security Instrument" means this document, which is dated   JULY 31, 2006                    , together with all Riders to this document.
(B)  "Borrower" is   DOROTHY VALGENTI,


Borrower is the mortgagor under this Security Instrument.
(C)  "MERS" is  Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(D)  "Lender" is  NOVASTAR MORTGAGE, INC.

Lender is a   CORPORATION                                                      organized
and existing under the laws of  VIRGINIA
Lender's address is  6200 OAK TREE BLVD. THIRD FLOOR, INDEPENDENCE, OHIO 44131

---

INDIANA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3015 01/01                                    Page 1 of 13

*DocMagic* *eFarms* 800-649-1362
*www.docmagic.com*

DJV 7/31/06

(E)  "Note" means the promissory note signed by Borrower and dated   JULY 31, 2006
The Note states that Borrower owes Lender   TWO HUNDRED FORTY-SEVEN THOUSAND FIVE
HUNDRED AND 00/100                    Dollars (U.S. $   247,500.00        ) plus interest.
Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than
AUGUST 1, 2036
(F)  "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(G)  "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under
the Note, and all sums due under this Security Instrument, plus interest.
(H)  "Riders" means all Riders to this Security Instrument that are executed by Borrower.  The following Riders are
to be executed by Borrower [check box as applicable]:

| | | | |
|---|---|---|---|
| ☒ Adjustable Rate Rider | | ☐ Planned Unit Development Rider | |
| ☐ Balloon Rider | | ☐ Biweekly Payment Rider | |
| ☐ 1-4 Family Rider | | ☒ Second Home Rider | |
| ☐ Condominium Rider | | ☒ Other(s) [specify] | |

PREPAYMENT RIDER TO SECURITY INST

(I)  "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and
administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial
opinions.
(J)  "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges
that are imposed on Borrower or the Property by a condominium association, homeowners association or similar
organization.
(K)  "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft,
or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or
magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account.  Such term
includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by
telephone, wire transfers, and automated clearinghouse transfers.
(L)  "Escrow Items" means those items that are described in Section 3.
(M)  "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any
third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or
destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in
lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(N)  "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(O)  "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note,
plus (ii) any amounts under Section 3 of this Security Instrument.
(P)  "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing
regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or
successor legislation or regulation that governs the same subject matter.  As used in this Security Instrument,
"RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan"
even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
(Q)  "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that
party has assumed Borrower's obligations under the Note and/or this Security Instrument.

DSV 7/31/06

700601983

# EXHIBIT A

LOT NUMBER 32 IN HARRISON HILL ADDITION TO THE CITY OF FORT WAYNE, ALLEN
COUNTY, INDIANA, EXCEPT THE EAST 40 FEET THEREOF, AS RECORDED IN PLAT
RECORD 7, PAGE 116.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following described property located in the

|  COUNTY | of | ALLEN |
|---|---|---|
| [Type of Recording Jurisdiction] | | [Name of Recording Jurisdiction] |

LOT NUMBER 32 IN HARRISON HILL ADDITION TO THE CITY OF FORT WAYNE, ALLEN COUNTY, INDIANA, EXCEPT THE EAST 40 FEET THEREOF, AS RECORDED IN PLAT RECORD 7, PAGE 116.

which currently has the address of        4135 S HARRISON ST
                                                                                [Street]

FORT WAYNE                      , Indiana      46807      ("Property Address"):
        [City]                                                     [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1.   Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return

---

DJV 7/31/06

any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

    2.   *Application of Payments or Proceeds.* Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

    If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

    Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

    3.   **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

    Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

---

INDIANA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3015 01/01          Page 4 of 13          DocMagic *eForms* 800-649-1362
www.docmagic.com

DJV 7/31/06

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.  **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.  **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed

DjV  7/31/06

by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Djv 7/31/06

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.   **Borrower's Loan Application.**  Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan.  Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.   **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.**  If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10.   Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

P;V  7/31/06

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether

DJV 7/31/06

or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires

INDIANA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3015 01/01                                     Page 9 of 13                          DocMagic *eRorms* 800-649-1362
                                                                                          www.docmagic.com

DJV 7/31/06

otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to Section 22 of this Security Instrument, (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

*PjV 7/31/06*

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action

DocMagic *eFarms* 800-649-1362
www.docmagic.com

Dj V 7/31/06

required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Waiver of Valuation and Appraisement.** Borrower waives all right of valuation and appraisement.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)          _____ (Seal)
DOROTHY   VALGENTI            -Borrower                                         -Borrower
                        7/30/06

_____ (Seal)          _____ (Seal)
                             -Borrower                                          -Borrower

_____ (Seal)          _____ (Seal)
                             -Borrower                                          -Borrower

Witness:                                         Witness:

_____                 _____

INDIANA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3015 01/01                          Page 12 of 13                          DocMagic eForms 800-649-1362
                                                                               www.docmagic.com

DJ·V 7/30/06

State of ~~Indiana~~ New Jersey

County of ~~ALLEN~~ Essex                    SS:

    Before me the undersigned, a Notary Public for
personally appeared    DOROTHY    VALGENTI

the execution of this instrument this 31 day of July, 2006

Essex   New Jersey, County, State of ~~Indiana~~,

and acknowledged

_Norris E Smith_
Notary Signature

_Norris E Smith_
Printed/Typed Name                              Notary Public

My commission expires: 06-05-09

County of residence: Essex

Norris E. Smith
Notary Public, NJ
My Commission Expires 06-05-09

(Seal)

This instrument was prepared by:

I affirm, under the penalties for perjury, that I have taken reasonable care to redact each Social Security number in
this document, unless required by law.

_Jessica Baker_
Signature of Preparer

INDIANA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3015 01/01                              Page 13 of 13                         DocMagic eFarms 800-649-1362
                                                                                  www.docmagic.com

DJV 7/31/06

MIN: 100080190057733297                  Loan Number: 06-788308

# ADJUSTABLE RATE RIDER
### (LIBOR Six-Month Index (As Published In *The Wall Street Journal*) - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 31st  day of JULY,  2006  ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure
Borrower's Adjustable Rate Note (the "Note") to NOVASTAR MORTGAGE, INC., A
VIRGINIA CORPORATION
("Lender") of the same date and covering the property described in the Security Instrument and located at:

4135 S HARRISON ST, FORT WAYNE, INDIANA 46807

[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE
INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE
AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND
THE MAXIMUM RATE BORROWER MUST PAY.

ADDITIONAL COVENANTS.  In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

## A.   INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of     10.250 %.  The Note provides for changes
in the interest rate and the monthly payments, as follows:

## 4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES
(A)   Change Dates
The interest rate I will pay may change on the 1st   day of AUGUST,  2008          ,
and on that day every 6th   month thereafter.  Each date on which my interest rate could change is called
a "Change Date."
(B)   The Index
Beginning with the first Change Date, my interest rate will be based on an Index.  The "Index" is the
average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market
("LIBOR"), as published in *The Wall Street Journal*.  The most recent Index figure available as of the first
business day of the month immediately preceding the month in which the Change Date occurs is called the
"Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon
comparable information.  The Note Holder will give me notice of this choice.

---

MULTISTATE ADJUSTABLE RATE RIDER–LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)
Single Family–Fannie Mae MODIFIED INSTRUMENT
Form 3138 1/01                              Page 1 of 3

*DocMagic* ☎ 800-649-1362
www.docmagic.com

DjY  7/31/06

(C)   **Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding SIX AND 400/1000                         percentage points (      6.400    %) to the Current Index.   The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%).  Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments.  The result of this calculation will be the new amount of my monthly payment.

(D)   **Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 13.250  % or less than      10.250  %.  Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE AND 000/1000                        percentage points (      1.000   %) from the rate of interest I have been paying for the preceding      6      months.  My interest rate will never be greater than 17.250 %.   My interest rate will never be less than      10.250%.

(E)   **Effective Date of Changes**

My new interest rate will become effective on each Change Date.  I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F)   **Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change.  The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B.**   **TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower.  As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.  Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan

MULTISTATE ADJUSTABLE RATE RIDER–LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)
Single Family–Fannie Mae MODIFIED INSTRUMENT
Form 3138 1/01                           Page 2 of 3

*DocMagic* *eForms*  800-649-1362
www.docmagic.com

DJV  7/31/06

assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_Dorothy J. Valgenti_ _____ (Seal)
DOROTHY VALGENTI        -Borrower

7/31/06

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

MULTISTATE ADJUSTABLE RATE RIDER--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)
Single Family--Fannie Mae MODIFIED INSTRUMENT
Form 3138 1/01                    Page 3 of 3

DocMagic *eForms* 800-649-1362
www.docmagic.com

Loan Number: 06-788308

# SECOND HOME RIDER

THIS SECOND HOME RIDER is made this 31st day of JULY 2006, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower," whether there are one or more persons undersigned) to secure Borrower's Note to NOVASTAR MORTGAGE, INC., A VIRGINIA CORPORATION
(the "Lender") of the same date and covering the Property described in the Security Instrument (the "Property"), which is located at:

4135 S HARRISON ST, FORT WAYNE, INDIANA 46807
[Property Address]

In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree that Sections 6 and 8 of the Security Instrument are deleted and are replaced by the following:

**6. Occupancy.** Borrower shall occupy, and shall only use, the Property as Borrower's second home. Borrower shall keep the Property available for Borrower's exclusive use and enjoyment at all times, and shall not subject the Property to any timesharing or other shared ownership arrangement or to any rental pool or agreement that requires Borrower either to rent the Property or give a management firm or any other person any control over the occupancy or use of the Property.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's second home.

DJV 7/31/06

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Second Home Rider.

7/31/06

_Dorothy J. Valgenti_ (Seal)
DOROTHY VALGENTI              -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

# PREPAYMENT RIDER

Loan Number: 06-788308

Date: JULY 31, 2006

Borrower(s): DOROTHY   VALGENTI

THIS PREPAYMENT RIDER (the "Rider") is made this 31st  day of JULY , 2006                                 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure repayment of Borrower's promissory note (the "Note") in favor of NOVASTAR MORTGAGE, INC., A VIRGINIA CORPORATION ,

("Lender").  The Security Instrument encumbers the Property more specifically described in the Security Instrument and located at

4135 S HARRISON ST, FORT WAYNE, INDIANA 46807
[Property Address]

ADDITIONAL COVENANTS.  In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A.     PREPAYMENT CHARGE**
    The Note provides for the payment of a prepayment charge as follows:

**5       .  BORROWER'S RIGHT TO PREPAY; PREPAYMENT CHARGE**
        I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment."  When I make a Prepayment, I will tell the Note Holder in writing that I am doing so.  I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.
        The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under the Note.  However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note.  If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes.
        If the Note provides for changes in the interest rate, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment.  However, any reduction due to my partial Prepayment may be offset by an interest rate increase.
        If within  TWENTY-FOUR   ( 24   ) months from the date the Security Instrument is executed I make a full Prepayment, I will pay a Prepayment charge in an amount equal to   TWO                              percent (   2.000   %) of the loan Principal.

---

INDIANA PREPAYMENT RIDER - FIRST LIEN
(REV. 12/04)                              Page 1 of 2

DocMagic *EForms* 800-649-1362
www.docmagic.com

*DjV 7/31/06*

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Rider.

_Dorothy J. Valgenti   7/31/06_ (Seal)
DOROTHY  VALGENTI          -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

**Ⓧ Chicago Title Insurance Company**

## COMMITMENT FOR TITLE INSURANCE

Issued by

Chicago Title Insurance Company

Chicago Title Insurance Company, a Missouri corporation ("Company"), for a valuable consideration, commits to issue its policy or policies of title insurance, as identified in Schedule A, in favor of the Proposed Insured named in Schedule A, upon payment of the premiums and charges and compliance with the Requirements; all subject to the provision of Schedules A and B and to the Condition of this Commitment.

This Commitment shall be effective only when the identity of the Proposed Insured and the amount of the policy or polices committed for have been inserted in Schedule A by the Company.

All liability and obligation under this Commitment shall cease and terminate 90 days after the Effective Date or when the policy or policies committed for shall issue, which ever first occurs, provided that the failure to issue the policy or policies is not the fault of the Company.

The Company will provide a sample of the policy form upon request.

IN WITNESS WHEREOF, Chicago Title Insurance Company has caused its corporate name and seal to be affixed by its duly authorized officers on the date shown in Schedule A.

Countersigned: _____

Authorized Officer or Agent

**CHICAGO TITLE INSURANCE COMPANY**

By: _____

President

ATTEST

_____

Secretary

Issued by:
Professionals' Title Services, LLC
9195 Broadway
Merrillville, IN  46410
(219)736-1825

72C101 (06/06)
ALTA Commitment - 2006

**Chicago Title Insurance Company**
101 West Ohio Street, Suite 1100, Indianapolis, IN 46204
Phone:  Fax:

**SCHEDULE A**

Title Officer:        Lisa M. Matson                                          Agent Order/File Number: FCL08-0209-4564
Address Reference:   Street Address: 4135 S. Harrison Street Fort Wayne, Indiana 46807
                     County and State: Allen, Indiana

1.   Effective Date:     September 2, 2008 at 08:00 AM

2.   Policy or Policies to be issued:                                                                    Amount

     (a)  __X__  Owner's Policy      (  ALTA Own. Policy (06/17/06)  )                              $ 10,000.00
          Proposed Insured:
          Saxon Mortgage Services

     (b)  _____  Loan Policy
          Proposed Insured:
          NONE

3.   The estate or interest in the land described or referred to in this Commitment is:
     Fee Simple

4.   Title to the Fee Simple estate or interest in the land is at the Effective Date vested in:
     Dorothy Valgenti

5.   The land referred to in the Commitment is described as follows:

     Lot Number 32, EXCEPT the East 40 feet thereof in Harrison Hill Addition to the City of Fort Wayne,
     according to the Plat thereof, recorded in Plat Record 7, page 116, in the Office of the Recorder of Allen
     County, Indiana.

Date:  September 9, 2008                                        **Chicago Title Insurance Company**
PROFESSIONALS' TITLE SERVICES, LLC                             By:  _____
                                                                                    President
By: _____                                  ATTEST
     AUTHORIZED OFFICER OR AGENT                               _____
                                                                                    Secretary

                                                               ALTA Commitment-2006
                                                               (VALGENTI-4135.PFD/FCL08-0209-4564/3)

Agent Order/File Number:  FCL08-0209-4564

## SCHEDULE B - SECTION I
## REQUIREMENTS

The following are the requirements to be complied with to satisfy item A of Schedule B-Section II.

1.   Pay us the premiums, fees and charges for the policy.

2.   Completion of the Foreclosure satisfactory to us of the mortgage shown in Schedule B-I, No. 13.

3.   Foreclosure Deed satisfactory to us creating the interest in the land to be insured must be signed, delivered and recorded.

4.   Affidavit satisfactory to us affirming that the Proposed Insured did to foreclose the mortgage shown in Schedule B-1, No. 13, in a manner that caused the land to be sold in violation of the Soldier's and Sailor's Act of 1940 and amendments thereto.

5.   You must tell us in writing the name of anyone not referred to in this Commitment who will get an interest in the land or who will make a loan on the land. We may then make additional requirements and exceptions.

6.   NOTE:
     By virtue of IC 27-7-3.6, a fee of $5.00 will be collected from the purchaser of the policy for each policy issued in conjunction with closings occurring on or after July 1, 2006. The fee should be designated in the 1100 series of the HUD form as a TIEFF (Title Insurance Enforcement Fund Fee) charge.

7.   Any Document that require a preparation statement and are executed or acknowledged in Indiana must contain the following affirmation statement required by IC 36-2-11-15:
     "I affirm, under the penalties for perjury, that I have taken reasonable care to redact each Social Security Number in this document, unless required by law. Signature of person".

8.   We require a letter and/or bill from the Clerk/Treasurer and/or the respective Sewer Department , that there are outstanding municipal/sewer assessments and/or liens affecting the subject premises.

9.   NOTE:  As of the effective date of this commitment, no delinquent sewer use charges, other than any set out in Schedule B - Section 2 - Exceptions, have been certified to the County Auditor and filed in County Recorder's Office as a lien against the insured real estate pursuant to I.C. 19-2-22.5-1 et seq. No search has been made for current or delinquent sewer use charges with the  Board of Public Works. (For information only-not to appear on the final policy)

10.  Pay real property taxes and assessments that are due and payable unless shown as paid.

11.  Disclosure of Sales Information form(s) prescribed by the State Board of Tax Commissioners pursuant to I.C. 6-1.1-5.5. to be filed with the Auditor's Office.

12.  Additional documents satisfactory to us to create the interest in the land to be insured which must be signed, delivered and recorded.

13.  Cancellation or release of Mortgage executed by Dorothy J. Valgenti and given to Mortgage Electronic Registration Systems, Inc., as nominee for Novastar Mortgage, Inc., dated July 31, 2006 and recorded August 9, 2006, as Document No. 206048070 securing the principal sum of $247,500.00 and such other sums as provided therein.
     To insure title upon Decree of Foreclosure and Sheriff's Deed, we require:
     a) A copy of the Complaint for Foreclosure of said mortgage.
     b) Proof of service on the defendants.
     c) Judgment against the defendants and decree ordering their premises sold.
     d) Praecipe for execution on the property filed with the Clerk at least three months after the Complaint.
     e) Certification of the judgment and decree by the Clerk to the Sheriff.
     f) Proof of legally adequate advertisement of the sale by the Sheriff.
     g) Report of sale and deed set out above.

14.  The following constitutes lien(s) against the real estate which is disclosed in the public records will not be shown as exception(s) to title on Schedule B-II Exceptions of the policy, provided that such matters are properly included in the foreclosure of the mortgage shown in Schedule B-1, No. 13,  and the foreclosure deed is issued to the Proposed Insured.

15.  Mortgage executed by Dorothy J. Valgenti and given to BMA Investments, LLC and George Fantini dated

Agent Order/File Number:  FCL08-0209-4564

## SCHEDULE B - SECTION I
### REQUIREMENTS
(Continued)

December 19, 2007 and recorded May 23, 2008, as Document No. 2008025268, securing the principal sum of $300,000.00 and such other sums as provided therein.

16.   Rights of tenants in possession as tenants only under unrecorded leases.

**END OF SCHEDULE B - SECTION I**

ALTA Commitment - 2006
(VALGENTI-4135.PFD/FCL08-0209-4564/3)

**SCHEDULE B - SECTION II**

**EXCEPTIONS**

Schedule B of the policy or policies to be issued will contain exceptions to the following matters unless the same are disposed of to the satisfaction of the Company.

A.    Instruments necessary to create the estate or interest to be insured must be properly executed, delivered and duly filed for record.

B.    Payment of the full consideration to, or for the account of, the grantors or mortgagors should be made.

C.    Payment of all taxes, charges, assessments, levied and assessed against subject premises, which are due and payable should be made.

D.    Defects, liens, encumbrances, adverse claims, or other matters, if any, created, first appearing in the public records or attaching subsequent to the effective date hereof but prior to the date of the proposed Insured acquires for value of record the estate or interest or mortgage thereon covered by this Commitment.

E.    Any Owner's Policy issued pursuant hereto will contain under Schedule B the General Exceptions set forth below.  Any Loan Policy will contain under Schedule B General Exceptions 1, 2, and 3 unless a satisfactory survey is furnished; General Exception 4 will appear unless satisfactory evidence is furnished that improvements and/or repairs or alterations thereto are completed; that contractor, subcontractors, labor and materialmen are all paid.

**General Exceptions:**

1.    Rights of claims of parties in possession not shown by the public records.

2.    Easements, or claims of easements, not shown by the public records.

3.    Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land.

4.    Any lien, or right to a lien, for services, labor, or material heretofore or hereafter furnished, imposed by law and not shown by the public records.

5.    Taxes or special assessments which are not shown as existing liens by the public records.

F.    **Special Exceptions:**

1.    Taxes for 2007 due and payable in 2008, in the name of Dorothy Valgenti.
Key Number: 02-12-14-460-005.000-074
First Installment 2007 taxes $937.32 are shown paid.
Second Installment 2007 taxes $937.32 are shown not paid and due  11/10/2008.
Taxes for 2008 due and payable in 2009, a lien, but not yet due and payable and taxes for all subsequent years, which are not yet a lien.
NOTE:  The Company will not be liable for any change in the amount of taxes due as a result of any recalculation of the reassessment process, if any.

NOTE:  The real estate tax information set out above was taken from the Allen County Data Processing Department computer system.  This information, while believed to be accurate, at this time is subject to change without notice.  Neither the Company nor its agent assumes or accepts any responsibility for loss, damage, costs or expense due to any change in the information reflected above.

2.    Chicago Title Insurance Company hereby agrees, upon receipt of proper additional premium, to increase the face amount of the policy or policies to be issued; subject, however, to the Conditions and Stipulations of this commitment and the underwriting rules and insurance regulations in effect at the date the additional insurance is requested.  The property herein described is worth considerably more than ($10,000.00), the amount of insurance applied for. In the event of partial loss, the insured shall be considered a co-insurer and the liability of the Company shall be pro-rata in the proportion said amount of insurance bears to the true value of the property.

Agent Order/File Number:  FCL08-0209-4564

## SCHEDULE B - SECTION II
### EXCEPTIONS
(Continued)

3.    Possible municipal assessments and/or sewer use charges or impact fees levied by the City of Fort Wayne, Indiana.

4.    Covenants, conditions and restrictions as contained in the plat of Harrison Hill Addition recorded in Plat Record 7, page 116, but omitting any covenant, condition, and restriction,  if any, based on race, color, religion, sex, handicap, familial status, or national origin unless and only to the extent that the covenant, condition or restriction (a) is exempt under Title 42 of the United States Code, or (b) relates to handicap, but does not discriminate against handicapped persons.

5.    Building setback lines as disclosed and granted on the recorded plat of said subdivision.

6.    Grant(s) and/or Reservation(s) of Easement(s) contained on the recorded plat of subdivision.

### END OF SCHEDULE B - SECTION II

## CONDITIONS

1.   The term mortgage, when used herein, shall include deed of trust, trust deed, or other security instrument.

2.   If the proposed Insured has or acquired actual knowledge of any defect, lien, encumbrance, adverse claim or other matter affecting the estate or interest or mortgage thereon covered by this Commitment other than those shown in Schedule B hereof, and shall fail to disclose such knowledge to the Company in writing, the Company shall be relieved from liability for any loss or damage resulting from any act or reliance hereon to the extent the Company is prejudiced by failure to so disclose such knowledge.  If the proposed Insured shall disclose such knowledge to the Company, or if the Company otherwise acquires actual knowledge of any such defect, lien, encumbrance, adverse claim or other matter, the Company at option may amend Schedule B of this Commitment accordingly, but such amendment shall not relieve the Company from liability previously incurred pursuant to paragraph 3 of these Conditions.

3.   Liability of the Company under this Commitment shall be only to the named proposed Insured and such parties included under the definition of Insured in the form of policy or policies committed for only for actual loss incurred in reliance hereon in undertaking in good faith (a) to comply with the requirements hereof, or (b) to eliminate exceptions shown in Schedule B, or (c) to acquire or create the estate or interest or mortgage thereon covered by this Commitment.  In no even shall such liability exceed the amount stated in Schedule A for the policy or policies committed for and such liability is subject to the insuring provisions and Conditions and the Exclusions from Coverage of the form of policy or policies committed for in favor of the proposed Insured which are hereby incorporated by references and are made a part of this Commitment except as expressly modified herein.

4.   This  Commitment is a contract to issue one or more title insurance polices and is not an abstract of title or a report of conditions of title.  Any action or actions or rights of action that the proposed Insured may have or may bring against the Company arising out of the status of the title to the estate or interest or the status of the mortgage thereon covered by this Commitment must be based on and are subject to the provisions of this Commitment.

5.   *The policy to be issued contains an arbitration clause.  All arbitrable matters when the Amount of Insurance is $2,000,000 or less shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the parties.  You may review a copy of the arbitration rules at <http://www.alta.org>.*

72C101 (06/06)
ALTA Commitment - 2006