

RECEIVED-CLERK
U.S. DISTRICT COURT
2010 JUL 15 P 6: 18

# UNITES STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

**Bridges Financial**
**Plaintiff**

**CIVIL CASE 09-cv-2686**
**Judges GEB-MCA**

**v.**

**Thomas J. Ernst, et al.**
**Defendant**

## DEFENDANT ERNST'S ANSWER, PER RULE 16.1 and INTERROGATORIES OF PLAINTIFF BRIDGES

**1)Names of Knowledgable Persons:**  Thomas J. Ernst, David Bidges, Jr., Geane Gill Texas Insurance Commission's Trustee. Ray Stocks

**2)Experts & Opinions:**  (a)Geane Gill, Insurance Trustee Appointed by Texas Insurance Commissioner & Direct Participant at Marriott Hotel Business Meeting with Bth Plaintiff & Defendant.  Gill will swear that Plaintiff Bridges falsely and explicitly promised Gill and Defendant Ernst that the necessary $30 Million had been raised and was ready for investment and acquisition.  (b) Ray Stocks will testify that Plainiff Bridges falsely representated that both GMAC and GE Capital were among the "investors" in Bridges Group.  (c) Law Professor Mark Denbeaux of Seton Hall Law School ill testify that the Promssisory Note between Plaintiff et al. and Beech Hill and Thomas J. Ernst (as an "Individual" was and is illegal under NJSA 21:C 19-21 and 31: 1-6.

**3) NO Insurance Policies** cover this dispute, to best of Defendant's belief and knowledge.

**4)** <u>Statement of Basis for Damages</u>:  **(a) Plaintiff verbally and in writing Promised to loan $300,000 to Defendants and then breached the note and contracts; (b) Plaintiff misappropriated $142,000 and illegally bought METCARE HMO Stock while Plaintiff claimed to have bought large amounts of stock and then also claimed to have sold said stock at NO profit.  Later, all stock in METCARE was bought by HUMANA HMO, gaitn public firm for $14 Million USD thereby depriving Defendants of much large profits of sale of METCARE stock.**

**5)** <u>Documents Proving Plaintiff's Fraud</u> **and Fradulent Inducemnt are attached to these material⌒.**

**6)** <u>ALL OTHER DOCUMENTS</u>**, in Defendant Ernst's possession, including any and all E-MAILS RELEVANT are also attached hreto and submitted herewith.**

**7) Defendant Ernst and Attorney Josh Denbeaux who represents Defendant's Ernst's wife will meet and converse with opposing counsel in effort to settle this dispute,**

**8)  Defendant Ernst PRC SE will meet and/or talk with appropriate State and NJ County officials regarding** <u>Plaintiff Bridges' violations of NJ Criminal Usury Laws and regulations.</u>

**9)  Defendant Ernst PRO SE will meet and/or talk with appropriate State officials regarding Plaintiff's violations of NJ Licensed Lender laws and** <u>Plaintiff Bridges' additional violations of NJ Licensed Mortgage Broker/Lender laws.</u>

**Page 2 of Defendant's Responses**

RECEIVED-CLERK
U.S. DISTRICT COURT

2010 JUL 15 P 6: 18

# CERTIFICATION & PROOF OF MAILING

I certify and afform that true and complete copies of all hese materials were mailed to all counsels of record of this 15th day  of July 2010 by US MAIL FIRST CLASS PREPAID.

*Thomas J. Ernst, J.D.*

# Respectfully Submitted PRO SE pn this 15th day of July
# 2010

*Thomas J. Ernst, PRO SE*

**Thomas J. Ernst, PRO SE**
**784 Morris Turnpoke**
**Suite 134**
**Short Hills, NJ 07078**
**732-456-1205**

Thomas J. Ernst
784 Morris Turnpike, Suite 134
Short Hills, NJ 07078
732-456-1205
tom@medicure.biz

# U.S. DISTRICT COURT
# DISTRICT OF NEW JERSEY

**Bridges Group**
**Plaintiff**

**v.**                                  **CASE # 09-2686-09 GEB-MCA**

**Thomas Ernst, et al.**
**Defendant**

# Defendant's Ernst EXHIBIT #1
# True Copy of Illegal Note/Contract
# Prepared by Plaintiff Bridges



**A**

## PROMISSORY NOTE

This Promissory Note is made and entered into this 14th day of December 2007 by and between Beech Hill Company, Inc., (hereinafter "BHC") and Thomas J. Ernst (hereinafter "Ernst" and with BHC collectively hereinafter "Borrowers") and George Fantini of Delaware and BMA Investments, LLC of Woodbridge, Virginia (collectively hereinafter "Lenders").

The laws of the State of Virginia shall govern this agreement. This agreement shall be binding of the successors, heirs, assigns, executors, administrators of all parties.

All parties agree and promise as follows:

1.  The Amount of this Short-Term Loan to Borrowers shall be Three Hundred Thousand ($300,000) US Dollars.

2.  The term or maturity date of this loan shall be Ninety Calendar Days (90) from the date first written above.

3.  Borrower shall pay to the Lender(s) eight and one third percent (8 and 1/3rd %) the sum of Twenty-Five Thousand ($25,000) as a lender fee and/or other consideration for making this loan.

4.  Borrower shall also pay to the Lender(s) the sum of an additional Eight and one-third (8 and 1/3rd %) or Twenty-Five Thousand ($25,000) US Dollars as pre-paid interest on said loan.

5.  There shall be NO pre-payment penalty if Borrower repays fully said loan PRIOR to its ninety calendar (90) day term. Some of the proceeds amount to Fifty Thousand ($50,000) shall be promptly paid to "BHC, INC." by wire transfer, less title, preparation, and recording fees, per attached voided check.

6.  The remaining Two Hundred Thousand ($200,000) shall be wire transferred, only after Lender receive specific written permission/instructions from borrower, to COPS Worldwide, INC., Daniel Overmeyer, President and Ed Overmeyer, Vice President for BHC's exclusive credit there at cops.

Initials: _____

## PROMISSORY NOTE

7.  The interest rate on this loan shall be eight and one-third (8 and 1/3rd %)) percent per 90 calendar days computed at regular or simple interest rate.

8.  Borrower agrees that collateral shall be Second Deeds of Trusts on 4135 South Harrison, Ft. Wayne, IN and 700 Ocean Avenue, Unit 312, Spring Lake, NJ and 66 Garden Ave., Chatham, NJ with legal title and trust documents to govern.

9.  Upon full repayment by BHC and Ernst, lenders shall immediately (a) remove any liens and/or trusts or other encumbrances from said real properties listed above, and (b) shall also issue and execute Deeds of Release and/or waivers regarding said properties listed above. All parties further agreed that true Fax copies and true Xerox copies shall substitute and have the same legal effect as the original as if said true copies were first written herein.

IN WITNESS WHEREOF, all parties do now agree and promise to abide by the terms and provisions above, who now intending to be legally bound, do now duly execute this agreement as evidence of their legal obligations:

Beech Hill Company, Inc

by: _Thomas J. Ernst_

Title: _President_

_THOMAS J. ERNST as President_
Thomas J. Ernst, Individual

NOTARY PUBLIC:

_Sadia Spanta_
Notary

Date: 12/19/07

SADIA S. SPANTA
Notary Public
Commonwealth of Virginia
My Commission Expires Feb 28, 2010

**B**

# DEFENDANT ERNST'S

## **EXHIBIT 'A'**

**TRUE COPY** OF PLAINTIFF'S DRAFTED &
PLAINTIFF-MANDATED "**Illegal**" and "**Usurious
2009 MORGAGE DOCUMENT &
ASSIGNMENT**"

Plaintiff's Note REQUIRING 33% INTEREST
RATES PER ANNUM IN VIOLATES NEW
*JERSEY USURY LAWS, NJSA 21C – 21-19*
and in violation also of *NJSA 31:1-6*

**C**

DEC-19-2007/WED 14:13   COMMERCE BANK PERSONAL BANKING   (FAX)   P. 002
12/19/2007 17:09   7034943943   CARTERET MORTGAGE CO   PAGE 01/02

## PROMISSORY NOTE

This Promissory Note is made and entered into this 14th day of December 2007 by and between Beech Hill Company, Inc., (hereinafter "BHC") and Thomas J. Ernst (hereinafter "Ernst" and with BHC collectively hereinafter "Borrowers") and George Fantini of Delaware and BMA investments, LLC of Woodbridge, Virginia (collectively hereinafter "Lenders").

The laws of the State of Virginia shall govern this agreement. This agreement shall be binding of the successors, heirs, assigns, executors, administrators of all parties.

All parties agree and promise as follows:

1. The Amount of this Short-Term Loan to Borrowers shall be Three Hundred Thousand ($300,000) US Dollars.

2. The term or maturity date of this loan shall be Ninety Calendar Days (90) from the date first written above.

3. Borrower shall pay to the Lender(s) eight and one third percent (8 and 1/3rd %) the sum of Twenty-Five Thousand ($25,000) as a lender fee and/or other consideration for making this loan.

4. Borrower shall also pay to the Lender(s) the sum of an additional Eight and one-third (8 and 1/3rd %) or Twenty-Five Thousand ($25,000) US Dollars as pre-paid interest on said loan.

5. There shall be NO pre-payment penalty if Borrower repays fully said loan PRIOR to its ninety calendar (90) day term. Some of the proceeds amount to Fifty Thousand ($50,000) shall be promptly paid to "BHC, INC." by wire transfer, less title, preparation, and recording fees, per attached voided check.

6. The remaining Two Hundred Thousand ($200,000) shall be wire transferred, only after Lender receive specific written permission/instructions from borrower, to COPS Worldwide, INC., Daniel Overmeyer, President and Ed Overmeyer, Vice President for BHC's exclusive credit there at cops.

Initials: _____

Page 1 of 2

**CONFIDENTIAL
TAXPAYER'S COPY** 12/19/07

D

DEC-19-2007(WED) 16:44   COMMERCE BANK FREEHOLD   (FAX)1 215 612360   P.001
12/18/2007  17:09   7034943943          CARTERET MORTGAGE CO                PAGE  02/02

## PROMISSORY NOTE

7. The interest rate on this loan shall be eight and one-third (8 and 1/3rd %)) percent per 90 calendar days computed at regular or simple interest rate.

8. Borrower agrees that collateral shall be Second Deeds of Trusts on 4135 South Harrison, Ft. Wayne, IN and 700 Ocean Avenue, Unit 312, Spring Lake, NJ and 66 Garden Ave., Chatham, NJ with legal title and trust documents to govern.

9. Upon full repayment by BHC and Ernst, lenders shall immediately (a) remove any liens and/or trusts or other encumbrances from said real properties listed above, and (b) shall also issue and execute Deeds of Release and/or waivers regarding said properties listed above. All parties further agreed that true Fax copies and true Xerox copies shall substitute and have the same legal effect as the original as if said true copies were first written herein.

IN WITNESS WHEREOF, all parties do now agree and promise to abide by the terms and provisions above, who now intending to be legally bound, do now duly execute this agreement as evidence of their legal obligations:

Beech Hill Company, Inc

by: _____Thomas J. Ernst_____

Title: _____President_____

_____THOMAS J. ERNST as President_____
Thomas J. Ernst, Individual

NOTARY PUBLIC:


_____Sadia Spanta_____        _____12/19/07_____
Notary                            Date

SADIA S. SPANTA
Notary Public
Commonwealth of Virginia
My Commission Expires Feb 28, 2010

Page 2 of 2

**CONFIDENTIAL
TAXPAYER'S COPY**

**E**

# DEFENDANT ERNST'S

# EXHIBIT B

**TRUE COPY** OF PLAINTIFF'S DRAFTED &
PLAINTIFF-MANDATED "**Illegal**" and "**Usurious**
**2009 MORTGAGE DOCUMENT &**
**ASSIGNMENT**

Plaintiff's Note REQUIRING 33% INTEREST
RATES PER ANNUM IN VIOLATES NEW
*JERSEY USURY LAWS, NJSA 21C – 21-19*
and in violation also of *NJSA 31:1-6*

**F**

**"Individual" Defendant Ernst's Exhibit #1**

**True Copy of New Jersey State Law 2C:21-19**
**Showing that the Plaintiff Bridges'**
**33% Interest Rate Loan to**
**"*Individuals*"Like Defendant Ernst**
**Violates New Jersey's *Criminal Usury* Law**

**&**

**Plaintiff Bridges Should Be Found "*Guilty*" of**
***Criminal Usury* in New Jersey**

**G**

---

TITLE 2C    THE NEW JERSEY CODE OF CRIMINAL JUSTICE
    2C:21-19  Wrongful credit practices and related offenses.

---

## 2C:21-19   Wrongful credit practices and related offenses.

2C:21-19 .  Wrongful Credit Practices and Related Offenses.

   a.     Criminal usury.  A person is guilty of criminal usury when not being authorized or permitted by law to do so, he:

   (1)      Loans or agrees to loan, directly or indirectly, any money or other property at a rate exceeding the maximum rate permitted by law; or

   (2)      Takes, agrees to take, or receives any money or other property as interest on the loan or on the forbearance of any money or other interest in excess of the maximum rate permitted by law.

   For the purposes of this section and notwithstanding any law of this State which permits as a maximum interest rate a rate or rates agreed to by the parties of the transaction, any loan or forbearance with an interest rate which exceeds 30% per annum shall not be a rate authorized or permitted by law, except if the loan or forbearance is made to a corporation, limited liability company or limited liability partnership any rate not in excess of 50% per annum shall be a rate authorized or permitted by law.

   Criminal usury is a crime of the second degree if the rate of interest on any loan made to any person exceeds 50% per annum or the equivalent rate for a longer or shorter period.  It is a crime of the third degree if the interest rate on any loan made to any person except a corporation, limited liability company or limited liability partnership does not exceed 50% per annum but the amount of the loan or forbearance exceeds $1,000.00.  Otherwise, making a loan to any person in violation of subsections a.(1) and a.(2) of this section is a disorderly persons offense.



# DEFENDANT ERNST's EXHIBIT "C"

## TRUE COPIES OF ALL DOCUMENTS FROM DEFENDANT ERNST FILES REGARDING PLAINTIFF

# <u>Defendant Ernst's Exhibit #2</u>

**True Copy of New Jersey's Criminal Usury Law, NJSA 31:1-6, Which Explicitly Prohibits Plaintiff Bridges' Financial Corporation to Even Assert Or Attempt Any Form of Legal Defense;**



**Further, Plaintiff Bridges' Usury of 33% Interest Rate It Charged "Individual" Defendant Ernst Was So Outlandish and So Outrageous & Clearly Bridges Promissory NOTE was _Per Se_ Illegal & A NJ Crime in the Second (2nd) Degree!**

I

## 31:1-6 Defense of usury by corporation, limited liability company, limited liability partnership; prohibited.

| | Search | ● New Jersey Code ○ All US State Codes |
|---|---|---|

**31:1-6□□ Defense of usury by corporation, limited liability company, limited liability partnership; prohibited.**

31:1-6.□ No corporation, limited liability company or limited liability partnership shall plead or set up the defense of usury to any action brought against it to recover damages or enforce a remedy on any obligation executed by said corporation, limited liability company or limited liability partnership.

Amended 1953, c.30, s.4; 1997, c.426, s.1.

J

# DEFENDANT ERNST'S

## EXHIBIT B

**TRUE COPY** OF PLAINTIFF'S DRAFTED &
PLAINTIFF-MANDATED "**Illegal**" and "**Usurious
2009 MORTGAGE DOCUMENT &
ASSIGNMENT**"

Plaintiff's Note REQUIRING 33% INTEREST
RATES PER ANNUM IN VIOLATES NEW
*JERSEY USURY LAWS, NJSA 21C – 21-19*
and in violation also of *NJSA 31:1-6*



Case 2:09-cv-02686-GEB-MCA   Document 56   Filed 07/15/10   Page 16 of 52 PageID: 536

**US CODE**

Copyrights

Crimes

Labor

Patents

Shipping

**US CONSTITUTION**

Preamble

Art. I - Legislative

Art. II - Executive

Art. III - Judicial

Art. IV - States' Relations

Art. V - Mode of Amendment

Art. VI - Prior Debts

Art VII - Ratification

# New Jersey Statutes - Title 31 Interest and Usury - 31:1-6 Defense of usury by corporation, limited liability company, limited liability partnership; prohibited.

Legal Research Home > New Jersey Lawyer > Interest and Usury > New Jersey Statutes - Title 31 Interest and Usury - 31:1-6 Defense of usury by corporation, limited liability company, limited liability partnership; prohibited.

## Sponsored Links

**Lawyer**
New Jersey Spousal Support Lawyers. Named Super Lawyer 2009. Call Us!
www.SimeoneOSullivan.com

**Regulatory Compliance**
Learn about new regulations and compliance strategies.
www.deloitte.com/yourturn

**Construction Accident Law**
Construction Injury Lawyer Experienced Lawyers
www.hofmannlawfirm.com

**Ask a ID Lawyer Online**
14 Lawyers Are Online. Ask a Question, Get an Answer ASAP.
JustAnswer.com/Law/ID

**North Jersey QuickBooks**
Certified Experts! Setup, Training, Troubleshooting & Accounting Svc.
www.qb-nj.com

**Construction Accident Law**
Construction Injury Lawyer Experienced Lawyers
www.hofmannlawfirm.com

**File an LLC Online**
Start Your LLC by Saving Money. Includes Custom Operating Agreement
www.LegalZoom.com

**Ask a ID Lawyer Online**
14 Lawyers Are Online. Ask a Question, Get an Answer ASAP.
JustAnswer.com/Law/ID

Ads by Google

Ads by Google

**31:1-6. Defense of usury by corporation, limited liability company, limited liability partnership; prohibited.**

   31:1-6. No corporation, limited liability company or limited liability partnership shall plead or set up the defense of usury to any action brought against it to recover damages or enforce a remedy on any obligation executed by said corporation, limited liability company or limited liability partnership.

   Amended 1953, c.30, s.4; 1997, c.426, s.1.





**ASSIGNMENT OF SECOND MORTGAGE
AND OTHER COLLATERAL DOCUMENTS**

**KNOW ALL MEN BY THESE PRESENTS:**

APR 21 2009

    **That** GEORGE FANTINI and BMA INVESTMENTS, LLC, located at 3146 Golansky Blvd., Suite 101, Woodbridge, Virginia 22192, herein designated as the Assignor, for and in consideration of the sum of ONE DOLLAR ($1.00) and other good and valuable consideration, the receipt whereof is hereby acknowledged, does by these presents assign to THE BRIDGES FINANCIAL GROUP, INC., having an office at 12781 Darby Brooke Court, #101, Woodbridge, Virginia 22192, herein designated as the Assignee, a certain Mortgage dated December 20, 2007, on lands located at 700 Ocean Avenue, Unit 312, Block 43, Lot 1.312, Borough of Spring Lake, Monmouth County, State of New Jersey, to secure payment of the sum of THREE HUNDRED THOUSAND DOLLARS ($300,000.00), which Mortgage is recorded or registered in the Clerk's Office of Monmouth County on December 21, 2008, in Mortgage Book 8723, page 3461.

    **Together** with the following documents (the "Loan Documents"): (i) that certain Mortgage Note dated December 14, 2007 (the "Note"), by Beech Hill Company, Inc. and Thomas J. Ernst in favor of Assignor, and the money due and to grow due thereon, with the interest and all other sums due; and (ii) that certain Hypothecation Agreement dated December, 2007, by Thomas J. Ernst, Trustee of the Dorothy J. Valgenti Trust, Dorothy J. Valgenti, Individually, and Joanna Valgenti Ernst, Individually, in favor of Assignor. **To Have and to Hold** the same unto the said Assignee forever, subject only to all the provisions contained in the said Mortgage, Note and Loan Documents.

    **And** the said Assignor hereby constitutes and appoints the Assignee as the Assignor's true and lawful attorney, irrevocable in law or in equity, in the Assignor's name, place and stead but at the Assignee's cost and expense, to have, use and take all lawful ways and means for the recovery of all the said money and interest; and in case of payment, to discharge the same as fully as the Assignor might or could do if these presents were not made. And the Assignor covenants that there is now due and owing upon the said Mortgage and the Loan Documents secured thereby, the sum of <u>Two Hundred Twenty Nine Thousand Fifty Eight</u> DOLLARS (<u>$229,058.10</u>) principal with interest thereon to be computed at the rate of <u>Thirty Three and One Third</u> (<u>33.3%</u>) percent per year from <u>July 3rd, 20</u>09 with an origination fee in the amount of <u>Twenty Five Thousand</u> DOLLARS (<u>$25,000.00</u>), and that there are no set-offs, counterclaims or defenses against the same, in law or in equity, nor have there been any modifications or other changes in the original terms thereof, other than as stated herein.

    In all references herein to any parties, persons, entities or corporations the use of any particular gender or the plural or singular number is intended to include the appropriate gender or number as the text of the within instrument may require.





**M**

**IN WITNESS WHEREOF**, the said Assignor has caused these presents to be signed by its proper corporate officers and its corporate seal to be hereto affixed as of the 14ᵗʰ day of April, 2009.

Witness:

_(signature)_

_(signature)_

GEORGE FANTINI

_(signature)_

BMA INVESTMENTS, LLC

By: _(signature)_
Name: David G. Bridges
Title: Member

STATE OF  DE            :
                        :ss
COUNTY OF  NC           :

**BE IT REMEMBERED** that on this _14_ day of _APRIL_, 2009, before me, the undersigned witnessing authority, personally appeared GEORGE FANTINI, who I am satisfied is the individual described in and who executed the foregoing instrument, and he acknowledged that he signed the same as his voluntary act and deed. All of which is hereby certified.



_(notary seal: WILLIAM C. RUGLASS — MY COMMISSION EXPIRES MARCH 17 2013 — NOTARY PUBLIC — STATE OF DELAWARE)_

_(signature)_
Print Name: _WILLIAM C. RUGLASS FC_
Title: _____
Commission Expires: _3 / 17 / 2013_

**N**

STATE OF _Virginia_            :
                               :ss
COUNTY OF _Prince William_     :

**BE IT REMEMBERED** that on this _16th_ day of _March_, 2009, before me, the undersigned witnessing authority, personally appeared _David G Bridges_ who is a _Member_ of BMA INVESTMENTS, who I am satisfied is the person who signed the within instrument, and he acknowledged that he signed the same as such _Member_ aforesaid, and that the within instrument is the voluntary act and deed of such limited liability company duly authorized by consent of its members. All of which is hereby certified.

Print Name: _Melissa Caputo_
Title: _Notary_
Commission Expires: _04/30/2011_

## ASSIGNMENT OF SECOND MORTGAGE AND OTHER COLLATERAL DOCUMENTS

GEORGE FANTINI  and BMA INVESTMENTS, LLC

**TO**

THE BRIDGES FINANCIAL GROUP, INC.

Dated as of _April 14_, 2009

**Record and Return to:**

Jerrold S. Kulback, Esquire
Archer & Greiner, P.C.
One Centennial Square
Haddonfield, New Jersey  08033

BRI137.00801/March 9, 2009/3885691

O

## Defendant Ernst's Legal Position & Argument

This is an "*illegal contract*" and/or *breach of contract* case. It is "*Black Letter*" law that courts may not enforce *illegal* contracts. The promissory note and/or contract and mortgages in this case were prepared by Plaintiff Bridges. The note/contract is attached and shown as Exhibit #1 hereto and the related Assignment of Mortgage Agreement (also prepared by Plaintiff Bridges) is attached and shown as Exhibit #2 hereto.

The note/contract as well as the Assignment of Mortgage both illegally require interest rate repayment of 33% or more *in excess* of New Jersey's Criminal Usury Statute, N.J.S.A. which is attached and shown as Exhibit #3 hereto. Accordingly, this case should be dismissed with prejudice — as Plaintiff Bridges violated New Jersey's Criminal Usury laws and regulations by requiring more than the allowed upper limit of 30% interest with respect to *individual* defendant, Thomas Ernst.

The attached promissory note and/or contract as well as the subsequent mortgage both require much more interest than New Jersey's Criminal Usury Law permits. Therefore, the note/contract is *illegal* in New Jersey where the contract was signed and the subsequent mortgages and liens on certain New Jersey real personal residential properties owned by Defendants are also illegal and — all said mortgages and liens should be declared null and void. This Federal Court must apply New Jersey's Criminal Usury Laws to dismiss *with prejudice* this entire case brought by Plaintiff Bridges who wrote the illegal note/contracts/mortgage.

*Page 1*

P

This is an "illegal," Usurious Interest Rate contract case. Plaintiff Bridges' notes and mortgages clearly and overtly violated New Jersey's *Criminal Usury* laws, 2C: 21-19. This court, like all courts, cannot and should NOT enforce Plaintiff's illegal contract.

Moreover, this Court should consider not only dismissing with prejudice the Plaintiff's Complaint, but this Honorable Court should also evaluate, assess, and/or adjudge Plaintiff Bridges to be "guilty" of *Criminal Usury*, a felony in the Second (2d) degree under NJSA 2C: 21-19 as its alternate ruling. Very explicitly, New Jersey laws clearly prohibited Plaintiff Bridges or any persons from charging an "*individual*" like Defendant Ernst more *than* 30% interest rates on notes and mortgages.

Significantly, New Jersey laws also prohibit corporations like Bridges Financial from even asserting legal defenses in light of Bridges' outrageous Interest Rates. Plaintiff Bridges are frankly crude "*Loan Sharks*" under New Jersey law, specifically NJSA 31:1-6. Please see true copy of NJSA 31:1-6 which prohibits Plaintiff Bridges from any legal defense of their illegal contract.

1

**Q**

This is an "illegal," Usurious Interest Rate contract case.  Plaintiff Bridges' notes and mortgages clearly and overtly violated New Jersey's *Criminal Usury* laws, 2C: 21-19.  This court, like all courts, cannot and should NOT enforce Plaintiff's illegal contract.

Moreover, this Court should consider not only dismissing with prejudice the Plaintiff's Complaint, but this Honorable Court should also evaluate, assess, and/or adjudge Plaintiff Bridges to be "guilty" of *Criminal Usury*, a felony in the Second (2d) degree under NJSA 2C: 21-19 as its alternate ruling.  Very explicitly, New Jersey laws clearly prohibited Plaintiff Bridges or any persons from charging an "*individual*" like Defendant Ernst more *than* 30% interest rates on notes and mortgages.

Significantly, New Jersey laws also prohibit corporations like Bridges Financial from even asserting legal defenses in light of Bridges' outrageous Interest Rates.  Plaintiff Bridges are frankly crude "*Loan Sharks*" under New Jersey law, specifically NJSA 31:1-6.  Please see true copy of NJSA 31:1-6 which prohibits Plaintiff Bridges from any legal defense of their illegal contract.

1

R

This is fundamentally a breach of contract case as Plaintiff failed to give Defendants the promised consideration of $300,000. Citing the Restatement (Second) of Contracts Section 71 (1981), the Federal District Court in *Fregara v. Jet Aviation,* 764 F. Supp. 940, 948 held "the essential requirement of consideration is a bargained for exchange of promises." In this instant case, Plaintiff promised Defendants a $300,000 loan in exchange for Defendants assigning certain Second Mortgages on New Jersey residential properties. Defendants performed, but, Plaintiffs failed to pay the full promised for exchange of $300,000. Full consideration was never paid to Defendants. See *S.P. Dunham v. Dzurinko*, 125 N.J. Super. 296, 300 (App. Div. 1973) Remember that the essential requirement of consideration is a "bargained for exchange" of performance -- Defendants performed with Second Mortgages, but Plaintiff failed to deliver the full $300,000 required as consideration. See *Martindale v. Sandvik*, 173 N.J. 76, 88 (2002). See Restatement (Second) Contracts, Section 79 (1981).

Further, the contract and promissory note is "*voidable*" since Plaintiff falsely promised and misrepresented that the ultimate $30 Million loan was available by miss-representing in writing to Defendants that Plaintiff Bridges had both "*GMAC and GE Capital*" as Its own "*investors*." See Bridges' letter to Thomas Ernst. Plaintiff's misrepresentation was made to induce Defendants to assign their Second Mortgages. See *Schillaci v. First Fidelity Bank*, 311 N.J. Super 396, 403 (App. Div. 1998.

2

**S**

This is fundamentally a breach of contract case as Plaintiff failed to give Defendants the promised consideration of $300,000.  Citing the Restatement (Second) of Contracts Section 71 (1981), the Federal District Court in *Fregara v. Jet Aviation,* 764 F. Supp. 940, 948 held "the essential requirement of consideration is a bargained for exchange of promises." In this instant case, Plaintiff promised Defendants a $300,000 loan in exchange for Defendants assigning certain Second Mortgages on New Jersey residential properties. Defendants performed, but, Plaintiffs failed to pay the full promised for exchange of $300,000.  Full consideration was never paid to Defendants.  See *S.P. Dunham v. Dzurinko*, 125 N.J. Super. 296, 300 (App. Div. 1973)  Remember that the essential requirement of consideration is a "bargained for exchange" of performance -- Defendants performed with Second Mortgages, but Plaintiff failed to deliver the full $300,000 required as consideration. See *Martindale v. Sandvik*, 173 N.J. 76, 88 (2002). See Restatement (Second) Contracts, Section 79 (1981).

Further, the contract and promissory note is "*voidable*" since Plaintiff falsely promised and misrepresented that the ultimate $30 Million loan was available by miss-representing in writing to Defendants that Plaintiff Bridges had both "*GMAC and GE Capital*" as Its own "*investors*." See Bridges' letter to Thomas Ernst. Plaintiff's misrepresentation was made to induce Defendants to assign their Second Mortgages. See *Schillaci v. First Fidelity Bank*, 311 N.J. Super 396, 403 (App. Div. 1998.

T

Plaintiffs' various fees and charges required violated the New Jersey Licensed Lenders Act, NJS 11C:17-23(b) and the Plaintiffs were NOT properly licensed lenders in New Jersey. Plaintiffs also failed to provide a Truth in Lending Disclosure in the form and manner required by the Truth in Lending Act and Regulation Z governing mortgages on personal residential property. Plaintiffs Bridges are also NOT "*holders in due course*" as the original and only note/contract was with "BMA Investments and George Fantini of Delaware." Plaintiffs Bridges knew of their own fraud and Plaintiffs Bridges knew of the Defendants repeated refusal to pay the illegal note. Therefore, the Plaintiffs did not act in the utmost good faith required to become "holders in due course." Accordingly, Plaintiffs lack proper legal standing to bring foreclosure actions against Defendants.

Plaintiffs' outrageous pre-paid fees and commissions and other bogus charges, including but mot limited to their broker fees, also violated the *New Jersey Consumer Fraud Act*, N.J.S.A. 56:8-1 et seq. as the compensation and pre-payment schemes by Plaintiff deprived Defendants of faithful service of fiduciaries who are obligated under New Jersey law to advocate in their behalf. Plaintiffs' actions of deception, fraud, and misrepresentation are and were strictly prohibited by the New Jersey Consumer Fraud Act (*CFA, supra*. and see also *Chattin v. Cap May Greene, Inc.* 124 N.J. 520, 522 (1991) where alleged CFA violations consisted of an affirmative act by Plaintiffs, thus Defendant need not prove intent.)

3

# Defendant Ernst's Exhibit #1

### True Copy of UCC 3-302(a)(2)
### Showing Plaintiff is NOT "*Holder in Due Course*"



Case 2:09-cv-02686-GEB-MCA   Document 56   Filed 07/15/10   Page 27 of 52 PageID: 547



Search Law School      Search Cornell

**LII** / Legal Information Institute

# UCC: uniform commercial code

**U.C.C. - ARTICLE 3 - NEGOTIABLE INSTRUMENTS**
**..PART 3. ENFORCEMENT OF INSTRUMENTS**

## § 3-302. HOLDER IN DUE COURSE.

- (a) Subject to subsection (c) and Section 3-106(d), **"holder in due course"** means the holder of an instrument if:
    - (1) the instrument when issued or negotiated to the holder does not bear such apparent evidence of forgery or alteration or is not otherwise so irregular or incomplete as to call into question its authenticity; and
    - (2) the holder took the instrument (i) for value, (ii) in good faith, (iii) without notice that the instrument is overdue or has been dishonored or that there is an uncured default with respect to payment of another instrument issued as part of the same series, (iv) without notice that the instrument contains an unauthorized signature or has been altered, (v) without notice of any claim to the instrument described in Section 3-306, and (vi) without notice that any party has a defense or claim in recoupment described in Section 3-305(a).





**Cornell University Law School**

Search Law School    Search Cornell

LII / Legal Information Institute

# UCC: uniform commercial code

## U.C.C. - ARTICLE 3 - NEGOTIABLE INSTRUMENTS
## ..PART 3. ENFORCEMENT OF INSTRUMENTS

### § 3-302. HOLDER IN DUE COURSE.

- (a) Subject to subsection (c) and Section 3-106(d), **"holder in due course"** means the holder of an instrument if:
    - (1) the instrument when issued or negotiated to the holder does not bear such apparent evidence of forgery or alteration or is not otherwise so irregular or incomplete as to call into question its authenticity; and
    - (2) the holder took the instrument (i) for value, (ii) in good faith, (iii) without notice that the instrument is overdue or has been dishonored or that there is an uncured default with respect to payment of another instrument issued as part of the same series, (iv) without notice that the instrument contains an unauthorized signature or has been altered, (v) without notice of any claim to the instrument described in Section 3-306, and (vi) without notice that any party has a defense or claim in recoupment described in Section 3-305(a).
- (b) Notice of discharge of a party, other than discharge in an insolvency proceeding, is not notice of a defense under subsection (a), but discharge is effective against a person who became a holder in due course with notice of the discharge. Public filing or recording of a document does not of itself constitute notice of a defense, claim in recoupment, or claim to the instrument.
- (c) Except to the extent a transferor or predecessor in interest has rights as a holder in due course, a person does not acquire rights of a holder in due course of an instrument taken (i) by legal process or by purchase in an execution, bankruptcy, or creditor's sale or similar proceeding, (ii) by purchase as part of a bulk transaction not in ordinary course of business of the transferor, or (iii) as the successor in interest to an estate or other organization.
- (d) If, under Section 3-303(a)(1), the promise of performance that is the consideration for an instrument has been partially performed, the holder may assert rights as a holder in due course of the instrument only to the fraction of the amount payable under the instrument equal to the value of the partial performance divided by the value of the promised performance.
- (e) If (i) the person entitled to enforce an instrument has only a security interest in the instrument and (ii) the person obliged to pay the instrument has a defense, claim in recoupment, or claim to the instrument that may be asserted against the person who granted the security interest, the person entitled to enforce the instrument may assert rights as a holder in due course only to an amount payable under the instrument which, at the time of enforcement of the instrument, does not exceed the amount of the unpaid obligation secured.
- (f) To be effective, notice must be received at a time and in a manner that gives a reasonable opportunity to act on it.

**X**

Westlaw.

663 N.Y.S.2d 104
35 UCC Rep.Serv.2d 322
(Cite as: 243 A.D.2d 534, 663 N.Y.S.2d 104)

C

Page 1

Supreme Court, Appellate Division, Second Department,
New York.

COPELCO CAPITAL, INC., Respondent,
v.
PACKAGING PLUS SERVICES, INC., Appellant.

Oct. 14, 1997.

Lessor's assignee brought action against lessee for recovery of rental payments due under equipment leases. The Supreme Court, Nassau County, Alpert, J., entered summary judgment for assignee. Lessee appealed. The Supreme Court, Appellate Division, held that assignee was holder in due course that could enforce waiver of defenses clause.

Affirmed.

West Headnotes

[1] Secured Transactions ☜190
349Ak190 Most Cited Cases

Under New Jersey law, once "waiver of defenses" is raised with respect to nonconsumer transaction involving assignment, burden shifts to party claiming rights of holder in due course to establish that he is indeed holder in due course. N.J.S.A. 12A:9-206(1).

[2] Secured Transactions ☜190
349Ak190 Most Cited Cases

Under New Jersey law, execution of assignments and equipment leases, proof of payment for assignments, and affidavits and affirmation submitted by lessor's assignee established prima facie case that assignee paid value for assignments and took them in good faith without notice of any alleged claims or defenses to them and, hence, that assignee was holder in due course that could enforce waiver of defenses clause. N.J.S.A. 12A:9-206(1).

**104 Kral, Clerkin, Redmond, Ryan, Perry & Girvan, New York City (Charles E. Reuther, of counsel), for appellant.

Moritt, Hock & Hamroff, LLP, Garden City (Robert M. Tils and Michael S. Re, of counsel), for respondent.

**105 Before COPERTINO, J.P., and THOMPSON, FRIEDMANN and FLORIO, JJ.

MEMORANDUM BY THE COURT.

*534 In an action, *inter alia*, for the recovery of rental payments due under equipment leases, the defendant

appeals from a judgment of the Supreme Court, Nassau County (Alpert, J.), entered July 3, 1996, which, upon an order of the same court granting the plaintiff's motion for summary judgment, is in favor of the plaintiff and against it in the principal sum of $47,734.80.

ORDERED that the judgment is affirmed, with costs.

Minolta Copier Corporation (hereinafter Minolta) entered into five separate and distinct leases with Packaging Plus Services, Inc. (hereinafter Packaging), lessee and defendant herein, for the rental of five photocopy machines. In accordance with the leases, Packaging agreed to make 36 monthly payments for each of the five leased copiers. In addition, Packaging signed a waiver of defenses provision whereby it agreed that in the event Minolta should assign any or all of the leases, "the new owner will not be subject to any claims, defenses, or set-offs that [Packaging] may have against [Minolta]". Minolta assigned the leases to Copelco Capital, Inc. (hereinafter Copelco), a financing institution, on the same day or shortly after each lease was entered into. Packaging then began to default on each of its lease agreements, claiming that problems with the machines rendered them unusable. The trial court, applying New Jersey law as required by the governing law provisions of the leases, found that Packaging failed to raise a factual issue that Copelco did not obtain the assignments in good faith and for value and thus granted Copelco's motion for summary judgment.

Under the Uniform Commercial Code as adopted in New Jersey, an agreement by a lessee "that he will not assert against an assignee any claim or defense which he may have against the seller or lessor is enforceable by an assignee who takes his assignment for value, in good faith and without notice of a claim or defense" (N.J. Stat. Annot. § 12A:9-206[1] ). Under New Jersey's statutory framework, as well as that of most other States, the courts usually find no legal impediment to the validity of such waiver of defenses clauses in nonconsumer transactions when asserted by holders in due course (*see, First Natl. State Bank of New Jersey v. Reliance Elec. Co.*, 668 F.2d 725; **535 *Chemical Bank v. Penny Plate*, 144 N.J.Super. 390, 365 A.2d 945; *Dean v. Universal C.I.T. Credit Corp.*, 114 N.J.Super. 132, 275 A.2d 154).

[1][2] Once this "waiver of defenses" has been raised, the burden shifts to the party claiming the rights of a holder in due course to establish that he is indeed a holder in due course (*see, General Inv. Corp. v. Angelini*, 58 N.J. 396, 278 A.2d 193; *see also, First Nat. State Bank of New Jersey v. Reliance Elec. Co., supra; Dubin v. Hudson County Probation Dept.*, 267 N.J.Super. 202, 630 A.2d 1207; *Breslin v. New Jersey Investors, Inc.*, 70 N.J. 466, 361 A.2d 1). The execution of the assignments and the leases, proof of



Westlaw.

663 N.Y.S.2d 104

35 UCC Rep.Serv.2d 322

**(Cite as: 243 A.D.2d 534, 663 N.Y.S.2d 104)**

Page 2

payment for the assignments, and the affidavits and affirmation submitted by Copelco established a prima facie case that Copelco paid value for the assignments and took them in good faith without notice of any alleged claims or defenses to them and, hence, that Copelco was a holder in due course. The burden then shifted to Packaging to prove its contention that Copelco was not a holder in due course in that Copelco's close connection with Minolta precluded it from obtaining the assignments in good faith. Given that Packaging has failed to produce any evidence to rebut Copelco's prima facie showing that it obtained the assignments in good faith and without notice of the alleged claims that the leased equipment was unusable, Copelco is, as a matter of law and by virtue of New Jersey Statutes Annotated § 12A:9-206, free of those defenses raised by Packaging.

Packaging's remaining contentions are without merit.

663 N.Y.S.2d 104, 243 A.D.2d 534, 35 UCC Rep.Serv.2d 322

END OF DOCUMENT

Z

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Case 2:09-cv-02686-GEB-MCA   Document 56   Filed 07/15/10   Page 31 of 52 PageID: 551

## US CODE

Copyrights

Crimes

Labor

Patents

Shipping

## US CONSTITUTION

Preamble

Art. I - Legislative

Art. II - Executive

Art. III - Judicial

Art. IV - States' Relations

Art. V - Mode of Amendment

Art. VI - Prior Debts

Art VII - Ratification

# New Jersey Statutes - Title 12A Commercial Transactions - 12A:3-302 Holder in due course

Legal Research Home > New Jersey Lawyer > Commercial Transactions > New Jersey Statutes - Title 12A Commercial Transactions - 12A:3-302 Holder in due course

## Sponsored Links

**NJ Expungement Lawyer**
Fresh Start Today: Check Our Rates Free Consultation (973) 763-5668
www.njexpungementlawyer.com

**Ask a Lawyer: Contract**
19 Lawyers Are Online. Ask a Question, Get an Answer ASAP.
JustAnswer.com/Law/Contract-Breach

**Clancy, Callahan & Smith**
Full Service Law Firm Experience Integrity Reliability
CCSLAW.com

**Form New Jersey Company**
Incorporating in New Jersey hasn't been easier! Call us 1-800-COMPANY.
www.1800Company.com

**NJ Bankruptcy Lawyers**
Over 40 Years Experience - Call for Free Consultation 866-930-2075
www.scuramealey.com

**Clancy, Callahan & Smith**
Full Service Law Firm Experience Integrity Reliability
CCSLAW.com

**Form New Jersey Company**
Incorporating in New Jersey hasn't been easier! Call us 1-800-COMPANY.
www.1800Company.com

**Landlord Lease Agreements**
Commercial Real Estate Law We work with Landlords & Tenants
www.mrossllc.com

Ads by Google                    Ads by Google

**12A:3-302. Holder in due course**

a. Subject to subsection c. of this section and subsection d. of 12A:3-106, "holder in due course" means the holder of an instrument if:

(1) the instrument when issued or negotiated to the holder does not bear such apparent evidence of forgery or alteration or is not otherwise so irregular or incomplete as to call into question its authenticity; and

(2) the holder took the instrument for value, in good faith, without notice that the instrument is overdue or has been dishonored or that there is an uncured default with respect to payment of another instrument issued as part of the same series, without notice that the instrument contains an unauthorized signature or has been altered, without notice of any claim to the instrument described in 12A:3-306, and without notice that any party has a defense or claim in recoupment described in subsection a. of 12A:3-305.

b. Notice of discharge of a party, other than discharge in an insolvency proceeding, is not notice of a defense under subsection a. of this section, but discharge is effective against a person who became a holder in due course with notice of the discharge. Public filing or recording of a document does not of itself constitute notice of a defense, claim in recoupment, or claim to the instrument.

c. Except to the extent a transferor or predecessor in interest has rights as a holder in due course, a person does not acquire rights of a holder in due course of an instrument taken by legal process or by purchase in an execution, bankruptcy, or creditor's sale or similar proceeding, by purchase as part of a bulk transaction not in ordinary course of business of the transferor, or as the successor in interest to an estate or other organization.

d. If, under paragraph (1) of subsection a. of 12A:3-303, the promise of performance that is the consideration for an instrument has been partially performed, the holder may assert rights as a holder in due course of the instrument only to the fraction of the amount payable under the instrument equal to the value of the partial performance divided by the value of the promised performance.

e. If the person entitled to enforce an instrument has only a security interest in the instrument and the person obliged to pay the instrument has a defense, claim in recoupment, or claim to the instrument that may be asserted against the person who granted the security interest, the person entitled to enforce the instrument may assert rights as a holder in due course only to an amount payable under the instrument which, at the time of enforcement of the instrument, does not exceed the amount of the unpaid obligation

**1A**

Case 2:09-cv-02686-GEB-MCA   Document 56   Filed 07/15/10   Page 32 of 52 PageID: 552

secured.

f. To be effective, notice must be received at a time and in a manner that gives a reasonable opportunity to act on it.

g. This section is subject to any law limiting status as a holder in due course in particular classes of transactions.

L.1995,c.28,s.1.

**1B**

Case 2:09-cv-02686-GEB-MCA   Document 56   Filed 07/15/10   Page 33 of 52 PageID: 553

Preamble

Art. I - Legislative

Art. II - Executive

Art. III - Judicial

Art. IV - States' Relations

Art. V - Mode of Amendment

Art. VI - Prior Debts

Art VII - Ratification

under the instrument which, at the time of enforcement of the instrument, does not exceed the amount of the unpaid obligation secured.

f. To be effective, notice must be received at a time and in a manner that gives a reasonable opportunity to act on it.

g. This section is subject to any law limiting status as a holder in due course in particular classes of transactions.

L.1995,c.28,s.1.

Sections: Previous 3-202 3-203 3-204 3-205 3-206 3-207 3-301 3-302 3-303 3-304 3-305 3-306 3-307 3-308 3-309 Next

*Last modified: March 29, 2010*

Supreme Court Cases  |  Justia Law Firm Web Design

**1c**

8.      Rule 55(c) of the Federal Rules of Civil Procedure provides that "[f]or good cause shown, the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)." Fed. R. Civ. P. 55(c).  In resolving a motion to set aside a default under Rule 55(c), courts should consider: (1) whether the defendant has a meritorious defense; (2) whether the default was the result of the defendant's culpable conduct; and (3) whether the plaintiff will be prejudiced. See, United States v. $55,518.05 in U.S. Currency, 728 F.2d 192, 194 (3d Cir. 1984).

### Meritorious Defense

9.      The showing of a meritorious defense is accomplished when "allegations of defendant's answer, if established, would constitute a complete defense to the action." Id. Although the Answering Defendants "hotly dispute" the allegations of all three counts of the Complaint, they cannot legitimately deny that the Promissory Note and related Mortgages were in fact signed *and notarized.*

10.     In order to avoid the consequences of the loan defaults under the Promissory Note and Mortgages, in a poorly drafted and difficult to read Answer[1], the Answering Defendants concoct a story alleging that Plaintiff, along with David G. Bridges, David G. Bridges, Jr. and others, conspired to commit unspecified acts of fraud in connection with their business dealings with the Answering Defendants.[2]

---

[1] The incoherent ramblings and incomplete sentences in the Answer make it difficult to even draft this reply.

[2] This reply is not submitted on behalf of David G. Bridges or David G. Bridges, Jr., neither of whom is a party to this action.  The Answering Defendants attempt to join these gentlemen by way of Cross-Claim and/or Counterclaim.  The proper procedure is, of course, a third party complaint.  Even if the Answering Defendants had properly pled (and served) a third-party complaint, this Court lacks personal jurisdiction, as both gentlemen are residents of Virginia and do not maintain minimum contacts with the State of New Jersey.

It is also noted that the caption of the Answer refers to "BMA Investments," although there is no reference whatsoever in the body of the Answer to BMA Investments.  As set forth in the Bridges Declaration, BMA Investments, LLC and George Fantini were the original holders of the Promissory Note and Mortgages which are the subject of this action.  Plaintiff took the loan documents by way of a properly recorded assignment after the loan



4

New Jersey Statute Directory - NJSA 2C:21-19. Wrongful Credit Practices and Related O...   Page

## HOME - NJ STATUTES - NJSA 2C:21-19

**2C:21-19. Wrongful Credit Practices and Related Offenses.**



a. Criminal usury. A person is guilty of criminal usury when not being authorized or permitted by law to do so, he:
(1) Loans or agrees to loan, directly or indirectly, any money or other property at a rate exceeding the maximum rate permitted by law; or
(2) Takes, agrees to take, or receives any money or other property as interest on the loan or on the forbearance of any money or other interest in excess of the maximum rate permitted by law.

For the purposes of this section and notwithstanding any law of this State which permits as a maximum interest rate a rate or rates agreed to by the parties of the transaction, any loan or forbearance with an interest rate which exceeds 30% per annum shall not be a rate authorized or permitted by law, except if the loan or forbearance is made to a corporation, limited liability company or limited liability partnership any rate not in excess of 50% per annum shall be a rate authorized or permitted by law.

Criminal usury is a crime of the second degree if the rate of interest on any loan made to any person exceeds 50% per annum or the equivalent rate for a longer or shorter period. It is a crime of the third degree if the interest rate on any loan made to any person except a corporation, limited liability company or limited liability partnership does not exceed 50% per annum but the amount of the loan or forbearance exceeds $1,000.00. Otherwise, making a loan to any person in violation of subsections a.(1) and a.(2) of this section is a disorderly persons offense.

b. Business of criminal usury. Any person who knowingly engages in the business of making loans or forbearances in violation of subsection a. of this section is guilty of a crime of the second degree and, notwithstanding the provisions of N.J.S. 2C:43-3, shall be subject to a fine of not more than $250,000.00 and any other appropriate disposition authorized by N.J.S. 2C:43-2b.

c. Possession of usurious loan records. A person is guilty of a crime of the third degree when, with knowledge of the nature thereof, he possesses any writing, paper instrument or article used to record criminally usurious transactions prohibited by subsection a. of this section.

## CONCLUSION

In essence, New Jersey's usury statute applies mainly to a limited class of loans: (1) first lien residential mortgage loans made by persons that are not "housing creditors" under federal law, (2) junior lien residential loans made by persons that are not required to be licensed under the Licensed Lender Act, (3) consumer loans exceeding $15,000 but less than $50,000, (4) consumer loans made by parties that are not licensed lenders, and (5) commercial loans under $50,000 that are secured by non-residential real estate or personal property, or that are unsecured loans.

**1E**

with United States must only be pleaded, not ultimately proven. 28 U.S.C.A. § 1491(a)(1).

**2. United States ⟜66**

Requirements for valid contract with United States are mutual intent to contract, including offer, acceptance, and consideration, and authority on part of government representative who entered or ratified agreement to bind United States in contract.

**3. United States ⟜66**

Government contracts must comply with statutorily sanctioned regulations.

**4. Contracts ⟜136**

Contract which is plainly illegal is nullity and void ab initio.

**5. Contracts ⟜103**

Contract is "plainly illegal" when made contrary to statute or regulation either because of some action or statement by contracting party, or when contracting party is on direct notice that procedures being followed violate such requirements.

See publication Words and Phrases for other judicial constructions and definitions.

**6. United States ⟜66**

Private health care company had contract with United States to provide health care to dependents of members of uniformed services, for purposes of Contract Disputes Act, where offer and acceptance was made, as evidenced by negotiated and signed memoranda of understanding, there was consideration in mutuality of obligation, and memoranda of understanding was ratified by government representative with authority to bind United States in contract. Contract Disputes Act of 1978, § 2(3), 41 U.S.C.A. § 601(3).

**7. United States ⟜60**

Memoranda of understanding between private health care company and United States, regarding health care for dependents of members of uniformed services, was ratified by government representative with authority to bind United States in contract, for purposes of Contract Disputes Act, given that memoranda was forwarded to the Civilian Health and Medical Program of the Uni-

formed Services (CHAMPUS) approval designee and approved before being executed by hospital commander. 10 U.S.C.A. § 1072(4); Contract Disputes Act of 1978, § 2(3), 41 U.S.C.A. § 601(3).

**8. Contracts ⟜9(1)**

To be binding, contract must generally be sufficiently definite to permit determination of breach and remedies.

**9. United States ⟜66**

Private health care company's contract with United States to provide health care to dependents of members of uniformed services was sufficiently definite to permit determination of breach and remedies, as obligations of parties were clear and the Civilian Health and Medical Program of the Uniformed Services (CHAMPUS) regulatory scheme provided payment details. 10 U.S.C.A. § 1072(4); 32 C.F.R. § 199.14(g)(1) (1990).

**10. United States ⟜66**

Private health care company's agreements with United States to provide health care to dependents of members of uniformed services were contracts, even though such resource sharing agreements were not labeled contracts in the Civilian Health and Medical Program of the Uniformed Services (CHAMPUS) regulatory scheme. 10 U.S.C.A. § 1072(4).

**11. United States ⟜66**

Failure of Congress to use word contract in statute or regulation does not preclude holding that binding contract is formed.

**12. United States ⟜73(9)**

Private health care company's agreement with United States to provide health care to dependents of members of uniformed services was procurement contract for benefit of government, and, therefore, subject to Contract Disputes Act, as government had legal obligation to military dependents and was benefited by obtaining dependents' care at reduced rate. Contract Disputes Act of 1978, § 3(a), 41 U.S.C.A. § 602(a).

## TOTAL MEDICAL MANAGEMENT, INC. v. U.S.   1319
Cite as 104 F.3d 1314 (Fed. Cir. 1997)

received it was not an authorized contracting officer. While the proper submission of a certified claim to a contracting officer is a jurisdictional requirement, it is clear in this instance that defendant's contention that there was no authorized contracting officer to whom the claim could be submitted is predicated on the theory that no contract existed. Assuming that a contract existed here, it would plainly be covered by the CDA as a contract for services. As explained above, the existence of a contract is a question which cannot be disposed of at this juncture.

*Id.* As stated by the trial judge, the two arguments presented by the government are essentially the same: that there was no enforceable contract.

On July 11, 1994, the parties filed cross-motions for summary judgment on the issue of liability. On November 2, 1994, the trial court granted TMM's summary judgment motion and denied the government's motion. In a ruling from the bench, the trial judge held that liability turned on the meaning of the term "current CHAMPUS prevailing rate" used in the MOU. The judge agreed with TMM that this was the same as the "current CHAMPUS prevailing charge" as used in 32 C.F.R. § 199.14 (1990), rather than the "allowable rate," which, under the CHAMPUS regulations, would have included the MEI limitation.

On May 22, 1995, the government moved to suspend proceedings to provide further briefing on the argument that the MOUs were not enforceable contracts and requested leave to file a motion to dismiss for failure to state a claim upon which relief could be granted. This motion was denied on May 24, 1995 because of the prior disposition of all liability issues on summary judgment. A motion for reconsideration was denied on June 19, 1995.

## DISCUSSION

[1]   The Tucker Act limits the jurisdiction of the Court of Federal Claims to

any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1) (1994). Although the government argues that jurisdiction is lacking because there was no enforceable contract, the law is clear that, for the Court of Federal Claims to have jurisdiction, a valid contract must only be pleaded, not ultimately proven. *Spruill v. Merit Sys. Protection Bd.*, 978 F.2d 679, 686 (Fed.Cir.1992); *Gould, Inc. v. United States*, 67 F.3d 925, 929 (Fed. Cir.1995). There is no question that TMM pleaded the existence of a valid contract here. The proper question, despite the government's label, is one of the merits: whether TMM failed to state a claim upon which relief can be granted. *Id.*

[2–5]   The requirements for a valid contract with the United States are: a mutual intent to contract including offer, acceptance, and consideration; and authority on the part of the government representative who entered or ratified the agreement to bind the United States in contract. *Thermalon Indus., Ltd. v. United States*, 34 Fed.Cl. 411, 414 (1995) (citing *City of El Centro v. United States*, 922 F.2d 816, 820 (Fed.Cir.1990) and *Fincke v. United States*, 230 Ct.Cl. 233, 244, 675 F.2d 289, 295 (1982)). In addition, government contracts must comply with statutorily sanctioned regulations. *See, e.g., United States v. Amdahl Corp.*, 786 F.2d 387, 392 (Fed.Cir.1986) (holding that a procurement contract award in conflict with statute and regulation was void *ab initio*). A contract which is "plainly illegal" is a nullity and void *ab initio. John Reiner & Co. v. United States*, 163 Ct.Cl. 381, 325 F.2d 438, 440 (1963). A contract is "plainly illegal" when made contrary to statute or regulation either because of some action or statement by the contractor, or when the contractor is on "direct notice that the procedures being followed were violative of such requirements." *Amdahl*, 786 F.2d at 395 (quoting a decision of the Comptroller General, B–176393, 52 Comp. Gen. 214, 218 (1972) (citing *Schoenbrod v. United States*, 187 Ct.Cl. 627, 410 F.2d 400 (1969))).

Thomas J. Ernst
784 Morris Turnpike, Suite 134
Short Hills, NJ 07078
732-456-1205
tom@medicure.biz

U.S. DISTRICT COURT

2010   24  P 12: 07

## U.S. DISTRICT COURT
## DISTRICT OF NEW JERSEY

**Bridges Group**
**Plaintiff**

v.                                    **CASE # 09-2686-09 GEB-MCA**

**Thomas Ernst, et al.**
**Defendant**

### Defendant's Ernst 5-Page Summary
### of Defendant's Legal Position & Arguments

Comes now Defendant Ernst, PRO SE, to respectfully submit for this

Court's consideration a brief 5-page summary of Defendant's legal

positions and arguments pursuant to Judge Cox-Arleo's order prior to

June 30th, 2010 Settlement Conference.

Respectfully Submitted by:

*Thomas J. Ernst*

**Thomas J. Ernst, Pro Se**
**Defendant**

*Certification of Service:*
*I, Thomas J. Ernst, PRO SE, hereby certify that a copy of this filing and materials was sent by US Mail*
*Prepaid First Class to all counsels of record on this ___ day of June 2010:*

**IH**

## Defendant Ernst's Legal Position & Argument

This is an *"illegal contract"* and/or *breach of contract* case.  It is *"Black Letter"* law that courts may not enforce *illegal* contracts.  The promissory note and/or contract and mortgages in this case were prepared by Plaintiff Bridges.  The note/contract is attached and shown as Exhibit #1 hereto and the related Assignment of Mortgage Agreement (also prepared by Plaintiff Bridges) is attached and shown as Exhibit #2 hereto.

The note/contract as well as the Assignment of Mortgage both illegally require interest rate repayment of 33% or more *in excess* of New Jersey's Criminal Usury Statute, N.J.S.A. which is attached and shown as Exhibit #3 hereto.  Accordingly, this case should be dismissed with prejudice -- as Plaintiff Bridges violated New Jersey's Criminal Usury laws and regulations by requiring more than the allowed upper limit of 30% interest with respect to *individual* defendant, Thomas Ernst.

The attached promissory note and/or contract as well as the subsequent mortgage both require much more interest than New Jersey's Criminal Usury Law permits.  Therefore, the note/contract is *illegal* in New Jersey where the contract was signed and the subsequent mortgages and liens on certain New Jersey real personal residential properties owned by Defendants are also illegal and -- all said mortgages and liens should be declared null and void.  This Federal Court must apply New Jersey's Criminal Usury Laws to dismiss *with prejudice* this entire case brought by Plaintiff Bridges who wrote the illegal note/contracts/mortgage.

This is an "illegal," Usurious Interest Rate contract case.   Plaintiff Bridges' notes and mortgages clearly and overtly violated New Jersey's *Criminal Usury* laws, 2C: 21-19.   This court, like all courts, cannot and should NOT enforce Plaintiff's illegal contract.

Moreover,  this  Court  should  consider  not  only dismissing with prejudice the Plaintiff's Complaint, but this Honorable Court should also evaluate,  assess, and/or adjudge Plaintiff Bridges to be "guilty" of *Criminal Usury*, a felony in the Second (2d) degree under NJSA 2C: 21-19 as its alternate ruling.   Very explicitly, New Jersey laws clearly prohibited Plaintiff Bridges or any persons from charging an "*individual*" like Defendant Ernst more *than* 30% interest rates on notes and mortgages.

Significantly,  New  Jersey  laws  also  prohibit corporations like Bridges Financial from even asserting legal defenses in light of Bridges' outrageous Interest Rates.   Plaintiff Bridges are frankly crude "*Loan Sharks*" under New Jersey law, specifically NJSA 31:1-6.   Please see true copy of NJSA 31:1-6 which prohibits Plaintiff Bridges from any legal defense of their illegal contract.

2

**1J**

Plaintiffs' various fees and charges required violated the New Jersey Licensed Lenders Act, NJS 11C:17-23(b) and the Plaintiffs were NOT properly licensed lenders in New Jersey. Plaintiffs also failed to provide a Truth in Lending Disclosure in the form and manner required by the Truth in Lending Act and Regulation Z governing mortgages on personal residential property. Plaintiffs Bridges are also NOT "_holders in due course_" as the original and only note/contract was with "BMA Investments and George Fantini of Delaware." Plaintiffs Bridges knew of their own fraud and Plaintiffs Bridges knew of the Defendants repeated refusal to pay the illegal note. Therefore, the Plaintiffs did not act in the utmost good faith required to become "holders in due course." Accordingly, Plaintiffs lack proper legal standing to bring foreclosure actions against Defendants.

Plaintiffs' outrageous pre-paid fees and commissions and other bogus charges, including but mot limited to their broker fees, also violated the _New Jersey Consumer Fraud Act_, N.J.S.A. 56:8-1 et seq. as the compensation and pre-payment schemes by Plaintiff deprived Defendants of faithful service of fiduciaries who are obligated under New Jersey law to advocate in their behalf. Plaintiffs' actions of deception, fraud, and misrepresentation are and were strictly prohibited by the New Jersey Consumer Fraud Act (_CFA, supra_. and see also _Chattin v. Cap May Greene, Inc._ 124 N.J. 520, 522 (1991) where alleged CFA violations consisted of an affirmative act by Plaintiffs, thus Defendant need not prove intent.)

3

IK

As clearly shown in the attached UCC 3-302(a)(1,ii, iii), Plaintiff Bridges were required to take the note/instrument from BMA Investments and George Fantini (I) for value, (II) in good faith, (III) without notice that the instrument was overdue. Plaintiff thereby violated UCC requirements as the explicit terms of the note/contract require re-payment within ninety (90) days and was already overdue when Plaintiffs took the note. The dates on the note itself and the dates on the assignment of the Second Mortgages are *prima facie* that the illegal note was already "overdue. Consequently, the Plaintiffs were not and are not "holders in due course" and therefore these Plaintiffs are NOT eligible nor entitled to foreclosure they seek.

Plaintiffs Bridges are also guilty of GROSS Conflicts of Interest as Plaintiffs Bridges, acting as both Un-licensed lenders and also as Un-licensed brokers, still had common law obligations to act in utmost good faith and to act as "fiduciaries" to Defendants/Borrowers. Obviously, with the illegal, usurious interest terms of the note, Plaintiff failed to obtain Defendants the "most favorable" terms. See *Aden v. Fortsh*, 169 N.J. 64, 80 (2001) and *Thompson Realty Co. v. Hoagland*, 100 N.J. 478, 482-83 (1968) for discussion of "best efforts" required of brokers — even of UN-licensed brokers like Plaintiffs Bridges.

**1L**

Defendants were harmed by Plaintiff's material dual misrepresentations, namely, that (1) the full loan would be $300,000 and that (2) the imminent $30 Million loan was coming from Plaintiff's supposed own investors like GMAC and GE Capital.   Defendants' affidavits show that Plaintiffs' misrepresentations substantially contributed to Defendants' decisions to sign the $300,000 note and to assign their Second Mortgages. See Restatement (Second) Contracts, Section 167 (1981).

Moreover, the court cannot enforce an "*illegal*" contract.   The Plaintiffs' prepared Promissory Note violated New Jersey's own Criminal Usury Law by mandating in excess of 30% interest thereby making the note/contract illegal in New Jersey.   See *Rosen v. South Barney, Inc.,* 393 N.J. Super. 378 (App.Div. 2007). In addition, Plaintiff Bridges were never licensed as "mortgage lenders or brokers" in New Jersey; therefore, Plaintiffs' actions as unlicensed broker/lenders were illegal under New Jersey state law. The court, therefore, must rescind the contract/note.   Public policy compels courts not to enforce unlawful purposes or actions by Plaintiffs. See *Data Informatics, Inc. v. AmeriSOURCE Partners*, 338 N.J. Super 61, 78-79 (App. Div. 2001) Further, the 33%+ interest rate in Plaintiff-prepared note/contract is "unconscionable" under New Jersey law, N.J.S.A. 12 A:2-302(1), the court should refuse to enforce this unconscionable note/contract. See *Henningsen v. Bloomfield Motors*, 32 N.J. 358, 373 (1960) and Royal Indem. Co. v. Westinghouse Elec. Corp., 385 F. Supp. 520.   (Please See Plaintiff' Exhibit #3)

1'M

Yet another strong argument in favor of Defendants is that the Plaintiff Bridges is NOT a "holder *in due course*" and thereby violated N.J.S.A. 12A:3-302. Accordingly, Plaintiff cannot maintain Foreclosure or collection actions. The key factors under UCC 3-302 pertinent to this case are

(1) Plaintiff Bridges drafted and signed the (a) Promissory Note dated December 14, 2007;

(2) Plaintiff Bridges also drafted and signed the subsequent Mortgages and "Assignment of Mortgage and Collateral Documents on or about May 14, 2009 purportedly giving value to George Fantini and BMA Investments,LLC also owned and/or by Bridges. Obviously, Plaintiff Bridges thereby knew or should have known the December 2007 note calling for payment of 33% interest in 90 days was already due or in possible Default thereby violating NJSA 12A:3-302 and UCC 3-302.

Therefore, Plaintiff Bridges violated the requirement that a ***true holder in due course*** under UCC-3-302 which clearly states the holder must take the note in good faith without knowledge that the note was overdue or in possible default. Plaintiff Bridges was guilty of major conflicts of interest and violations of UCC 3-302as Bridges were the original drafter, signor, and active Participant on both sides of the invalid Assignment of Mortgages and the original note.

New Jersey's own Supreme Court ruled in favor of NJSA 12A:3-302 against a finance company seeking holder in due course status. See UCC 3-302.

**Obviously, Bridges already had notice that the note was over due. Clearly, Bridges failed to compiled with UCC 3-302's requirement that a "holder in due course" must <u>NOT</u> know the December 2007 90-day note note and/or instrument was overdue. For all these reasons, Plaintiff's complaint should be dismissed with prejudice.**

1 N

Thomas J. Ernst, PRO SE
784 Morris Turnpike, #134
Short Hills, NJ 07078
(732) 456-1205
tom@medicure.biz

U.S. DISTRICT COURT
U.S. DISTRICT COURT

2010 JUN 24 P 12: 07

# U.S. DISTRICT COURT
# DISTRICT OF NEW JERSEY

**Bridges Financial**
**Plaintiff**

**v.**                                          **Docket # CV-09-2686- GEB-MCA**

**Thomas J. Ernst, et al.**
**Defendant**

## CERTIFICATE & PROOF OF SERVICE

1. I am Thomas J. Ernst, of legal age, and acting PRO SE.

2. I now swear and affirm, under penalty of perjury, that true copies of this motion and supporting memorandum of law, and the proposed ORDER have been sent by US Mail, First Class, and Postage Prepaid to all counsels and parties of record in above-styled case on this 21st day of June 2010.

**Thomas J. Ernst, PRO SE Defendant**

1▸O

Thomas J. Ernst
784 Morris Turnpike, #134
Short Hills, NJ 07078
(732-456-21305

U.S. DISTRICT COURT

2010   24   P 12:06

## UNITED STATES DISTIRCT COURT
## DISTRICT OF NEW JERSEY

**Bridges Financial**

**Docket/Case No 09 CV 2686 GEB-MCA**

**v.**

**Thomas Ernst et al.**

## MOTION TO DISMISS WITH PREJUDICE
## PLAINTIFF's COMPLAINT

Comes now Defendant Thomas Ernst, PRO SE, to move this Honorable Court

now dismiss with prejudice Plaintiff's Complaint against all of the "*Individual*"

Defendants as both Plaintiff's Promissory Note and its Mortgage & Assignments

violate New Jersey's Criminal Usury Laws, 21C: 19-21 and 31:1-6.

     Both Plaintiff's Note and Mortgage required over 33% Interest Rate of

"*Individual*" Defendants in clear and explicit violations of the Statutory upper

limit of 30% for loans to "*Individuals*" under both NJSA 21C: 19-21 and also

under 31:1-6.  Plaintiff is guilty of "Criminal Usury.

Respectfully Submitted By:

*Thomas J. Ernst*

**Thomas J. Ernst, PRO SE**
**Individual Defendant**





**ASSIGNMENT OF SECOND MORTGAGE**
**AND OTHER COLLATERAL DOCUMENTS**

00BJ2Q

### KNOW ALL MEN BY THESE PRESENTS:

APR 2 1 2009

**That** GEORGE FANTINI and BMA INVESTMENTS, LLC, located at 3146 Golansky Blvd., Suite 101, Woodbridge, Virginia 22192, herein designated as the Assignor, for and in consideration of the sum of ONE DOLLAR ($1.00) and other good and valuable consideration, the receipt whereof is hereby acknowledged, does by these presents assign to THE BRIDGES FINANCIAL GROUP, INC., having an office at 12781 Darby Brooke Court, #101, Woodbridge, Virginia 22192, herein designated as the Assignee, a certain Mortgage dated December 20, 2007, on lands located at 700 Ocean Avenue, Unit 312, Block 43, Lot 1.312, Borough of Spring Lake, Monmouth County, State of New Jersey, to secure payment of the sum of THREE HUNDRED THOUSAND DOLLARS ($300,000.00), which Mortgage is recorded or registered in the Clerk's Office of Monmouth County on December 21, 2008, in Mortgage Book 8723, page 3461.

**Together** with the following documents (the "Loan Documents"): (i) that certain Mortgage Note dated December 14, 2007 (the "Note"), by Beech Hill Company, Inc. and Thomas J. Ernst in favor of Assignor, and the money due and to grow due thereon, with the interest and all other sums due; and (ii) that certain Hypothecation Agreement dated December, 2007, by Thomas J. Ernst, Trustee of the Dorothy J. Valgenti Trust, Dorothy J. Valgenti, Individually, and Joanna Valgenti Ernst, Individually, in favor of Assignor. **To Have and to Hold** the same unto the said Assignee forever, subject only to all the provisions contained in the said Mortgage, Note and Loan Documents.

**And** the said Assignor hereby constitutes and appoints the Assignee as the Assignor's true and lawful attorney, irrevocable in law or in equity, in the Assignor's name, place and stead but at the Assignee's cost and expense, to have, use and take all lawful ways and means for the recovery of all the said money and interest; and in case of payment, to discharge the same as fully as the Assignor might or could do if these presents were not made. And the Assignor covenants that there is now due and owing upon the said Mortgage and the Loan Documents secured thereby, the sum of <u>Two Hundred Twenty Nine Thousand Fifty Eight</u> DOLLARS (<u>$229,058.10</u>) principal with interest thereon to be computed at the rate of <u>Thirty Three and One Third</u> (<u>33.3%</u>) percent per year from <u>July 3rd</u>, 20<u>09</u> with an origination fee in the amount of <u>Twenty Five Thousand</u> DOLLARS (<u>$25,000.00</u>), and that there are no set-offs, counterclaims or defenses against the same, in law or in equity, nor have there been any modifications or other changes in the original terms thereof, other than as stated herein.



In all references herein to any parties, persons, entities or corporations the use of any particular gender or the plural or singular number is intended to include the appropriate gender or number as the text of the within instrument may require.



1 Q

**IN WITNESS WHEREOF**, the said Assignor has caused these presents to be signed by its proper corporate officers and its corporate seal to be hereto affixed as of the 14th day of April, 2009.

Witness:

_GEORGE FANTINI_

**BMA INVESTMENTS, LLC**

By: _____
Name: David G. Bridges
Title: Member

STATE OF _DE_      :
                          :ss
COUNTY OF _NC_    :

**BE IT REMEMBERED** that on this _14_ day of _APRIL_, 2009, before me, the undersigned witnessing authority, personally appeared GEORGE FANTINI, who I am satisfied is the individual described in and who executed the foregoing instrument, and he acknowledged that he signed the same as his voluntary act and deed. All of which is hereby certified.



_William C Rylord_
Print Name: _WILLIAM C. RUGLASS SR_
Title: _____
Commission Expires: _3/17/2013_

**1R**

<div style="border:1px solid black; padding:10px;">

## DEFENDANT ERNST'S
## EXHIBIT #1:

</div>

**True Copy of New Jersey State Law 2C-21-19 which prohibits Plaintiff from charging 33% Interest Rate to any "INDIVIDUALS" like Defendant Ernst.**

**Under NJSA @C-21-19, the Plaintiff Bridges appears to be "guilty" of criminal usury as Bridges was NOT permitted or authorized by New Jersey Law to make such usurious loans.**

**1S**

---

TITLE 2C    THE NEW JERSEY CODE OF CRIMINAL JUSTICE
  2C:21-19 Wrongful credit practices and related offenses.

---

## 2C:21-19   Wrongful credit practices and related offenses.

2C:21-19 . Wrongful Credit Practices and Related Offenses.

a.    Criminal usury.  A person is guilty of criminal usury when not being authorized or permitted by law to do so, he:

(1)    Loans or agrees to loan, directly or indirectly, any money or other property at a rate exceeding the maximum rate permitted by law; or

(2)    Takes, agrees to take, or receives any money or other property as interest on the loan or on the forbearance of any money or other interest in excess of the maximum rate permitted by law.

For the purposes of this section and notwithstanding any law of this State which permits as a maximum interest rate a rate or rates agreed to by the parties of the transaction, any loan or forbearance with an interest rate which exceeds 30% per annum shall not be a rate authorized or permitted by law, except if the loan or forbearance is made to a corporation, limited liability company or limited liability partnership any rate not in excess of 50% per annum shall be a rate authorized or permitted by law.

Criminal usury is a crime of the second degree if the rate of interest on any loan made to any person exceeds 50% per annum or the equivalent rate for a longer or shorter period.  It is a crime of the third degree if the interest rate on any loan made to any person except a corporation, limited liability company or limited liability partnership does not exceed 50% per annum but the amount of the loan or forbearance exceeds $1,000.00. Otherwise, making a loan to any person in violation of subsections a.(1) and a.(2) of this section is a disorderly persons offense.

**1T**

## <u>Affidavit</u> <u>in</u> <u>Support</u> <u>of</u> <u>Motion</u> <u>to</u> <u>Dismiss</u>

I am Thomas J. Ernst, of legal age and sound mind, and now being duly sworn,  do swear and affirm as follows:

1.  For all times relevant herein, I never received $300,000 in cash or consideration from Bridges Financial or from any of the Plaintiffs in the above-styled action.

2.  I signed or pledged various real property only because Bridges Financial has promised verbally and in writing to pay in cash a $300,000 loan which never materialized and which Bridges never provided to me or any other Defendants.

3.  Further, affiant sayeth naught.

_Thomas J. Ernst_
Thomas J. Ernst


_____
NOTARY PUBLIC:                    (SEAL)


Robert Dion Azzara
Notary Public New Jersey
My Commission Expires 01-21-2014


**1U**

## DEFENSES

## <u>FIRST SEPARATE DEFENSE</u>

### (Fair Foreclosure Act)

1. Plaintiff's Complaint seeks to foreclose upon Defendant's Mortgage, which is a "residential mortgage" as defined by the New Jersey Fair Foreclosure Act, N.J.S.A. 2A:50-53 *et. seq.*, and therefore Defendants are entitled to the protections and requirements set forth in the Fair Foreclosure Act.

2. Plaintiff failed to comply with the Fair Foreclosure Act, N.J.S.A. 2A:50-56, in any or all of the following ways:

   a. Plaintiff failed to serve Defendants with a Notice of Intent to Foreclose; and/or

   b. To the degree that Plaintiff served the Defendants with any pre-foreclosure notice, that notice failed to comply with the requirements of the Fair Foreclosure Act as enumerated in N.J.S.A. 2A:50-56(c); and/or

   c. To the extent that any pre-foreclosure notice was served upon Defendants, that Notice was not sent by the residential mortgage lender or lender as that term is defined by the Fair Foreclosure Act.

3. Based on the foregoing, the court lacks subject matter jurisdiction to hear Plaintiff's Complaint for Foreclosure.

6

*1V*